LEE, LLC
Peter Y. Lee, Esq.
770 River Road
PO Box 52
Edgewater, NJ 07020
(212) 808-0716
Peter.Lee@LeeAdvocates.Com E-Mail
*Attorneys for Plaintiff,*
*Sehoon Chang*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## (Newark Vicinage)

---

SEHOON CHANG,

             Plaintiff,

vs.

ABLE C&C CO. LTD.,

             Defendant.

Case No.: 2:23-cv-2590

## COMPLAINT WITH JURY DEMAND

---

Plaintiff, SEHOON CHANG, through undersigned counsel, and for its complaint against Defendant, ABLE C&C CO. LTD., alleges as follows:

<u>NATURE OF THE ACTION</u>

1.    Plaintiff, SEHOON CHANG ("Plaintiff" or "Chang") brings this action against his former employer, Defendant, ABLE C&C CO. LTD. ("Defendant") for breach of contract and related claims, following Defendant's termination of Chang's employment.

1

2.     Pursuant to the terms of the parties' two-year employment contract, Defendant promised Plaintiff an "exit bonus" upon the sale of Defendant's operations in the United States.

3.     Once Able's United States operations found a buyer and Plaintiff inquired about his "exit bonus," however, Able's senior executive hastily terminated Plaintiff for undisclosed reasons in spite of his consistent job performance over more than 3 years and Able's March 2020 decision to renew his employment contract for two more years.

4.     Independent of Plaintiff's inquiry about his "exit bonus," and well before his termination, moreover, Plaintiff also had alerted his supervisor and raised serious concerns about Able's importation of various products from South Korea into the United States by way of forged commercial invoices intended to defraud the United States or circumvent United States customs inspections and Food and Drug Administration (FDA) regulations over many ingredients found in Able's sunscreen products.

5.     Whether or not Able's decision to terminate is based on Plaintiff's entitlement to an "exit bonus," the timing and circumstances of Plaintiff's firing evidence unlawful retaliation under New Jersey law, namely the Conscientious Employee Protection Act, N.J.S.A. §34:19-1, *et seq*. (CEPA).

## JURISDICTION AND VENUE

6.    This Court enjoys subject matter jurisdiction under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000 and is between a citizen of a State and a citizen of a foreign state.

7.    Plaintiff is a New Jersey resident and citizen, while Defendant is a South Korean private corporation with a principal place of business located in South Korea.

8.    This Court enjoys personal jurisdiction because Defendant transacts business in the State of New Jersey through its United States subsidiary's office located in Englewood, New Jersey.

9.    Venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district. Specifically, at all relevant times, Plaintiff performed services for Defendant in this judicial district.

## THE PARTIES

10.    Plaintiff is an adult individual residing at 57 Country Club Road, Tenafly, New Jersey.

11.    Defendant is a publicly-traded South Korean company with its principal place of business located at 78 Namdaemun-ro, 7th Floor, Jung-gu, Seoul

153773, South Korea, and engages in the manufacturing and distribution of beauty cosmetics, including various skincare products, such as sunscreen.

12.    At all relevant times, Defendant transacted business in the State of New Jersey through its United States subsidiary and United States-based employees at its office located at 100 West Forest Avenue, Suite E, Englewood, New Jersey.

FACTUAL BACKGROUND

13.    On or about March 6, 2020, Plaintiff and Able's then-chief executive officer (based in South Korea), Mr. Hae Joon Lee executed an employment contract for Plaintiff to serve as Able's co-director for its United States operations. At all times, Mr. Hae Joon Lee played no role in Defendant's operations in the United States and did not reside in the United States.

14.    Among other things, the contract provided for a term of two years, along with an annual salary of $180,000.

15.    Once the contract was about to expire, the parties elected to continue their employment relationship. On or about March 6, 2022, Plaintiff and Able's South Korea-based chief executive officer, Ms. Yoo Jin Kim executed a subsequent employment contract, again recognizing Able's role as co-director of its United States operations. At all times, Ms. Yoo Jin Kim played no role in Defendant's operations in the United States and did not reside in the United States.

16.    The subsequent employment contract provided, among other things:

- Able promised Plaintiff an annual base salary of $200,000, along with an "annual incentive" of up to 20% of his annual base salary

- Under a section labeled "Exit Bonus," in the event South Korean firm, IMM Holdings Inc. (IMM Private Equity) sells its (direct or indirect) stake in Able, Able will pay Plaintiff a percentage of the sale proceeds as an "incentive"

- Plaintiff's employment can be terminated immediately only for "cause," which is defined in the contract: Otherwise, Plaintiff can be terminated "without cause," provided he is given 60 days' notice

17.    At all times, Plaintiff relied on Defendant's promises and discharged his duties accordingly.

18.    In or around September 2022, South Korea news outlets published countless articles concerning Defendant Able's inevitable default on several major credit obligations: To appease its creditors, Able's majority stakeholder, IMM Holdings Inc. planned to sell its controlling stake in Able because Able was otherwise unable to meet its debt obligations and other liabilities. To the extent Defendant is publicly traded in the South Korea Stock Exchange, better known as KOSPI (Korea Composite Stock Price Index), the impending sale garnered significant media attention in South Korea and Able's United States operations.

19.    The news disappointed Plaintiff, who otherwise enjoyed nearly 3 years with Able and hoped to retire at Able.

20.    By email sent February 11, 2023, Plaintiff inquired with Defendant Able's Ms. Yoo Jin Lee about his "exit bonus," given the impending sale of IMM Holdings Inc.'s controlling stake in Able.

21.    The following day, Ms. Yoo Jin Lee wrote Plaintiff back and, for the first time, declined any discussions about Plaintiff's "exit bonus." Further, Ms. Yoo Jin Lee's email copied two individuals from IMM Holdings Inc.

22.    On or about February 23, 2023, Ms. Yoo Jin Lee notified Plaintiff and his co-director, Mr. Jae Ahn that she planned to visit them in New Jersey. Ms. Yoo Jin Lee's visit was unusual because it was the first visit by any Able executive since the United States operations began.

23.    On Monday, February 27, 2023, Ms. Yoo Jin Lee met with Plaintiff and informed him, orally, that Able is terminating his employment and providing him two months' notice accordingly. Ms. Yoo Jin Lee provided no reason whatsoever for Defendant's unexpected decision.

24.    The following day, Plaintiff received Defendant's written notice of his termination, which provided for a last day of April 28, 2023. The written notice, signed by Ms. Yoo Jin Kim of Defendant Able's headquarters in South Korea, omitted any reason for Plaintiff's termination and referred to the "without cause" provision of the parties' employment contract.

COUNT ONE
(Anticipatory) Breach of contract

6

25.     Plaintiff repeats and alleges all foregoing paragraphs as though set forth fully at length herein.

26.     Plaintiff has fully complied with his obligations under the parties' contract signed March 6, 2022.

27.     By failing to pay Plaintiff his "Exit Bonus" or provide for the payment of the "Exit Bonus," Defendant has breached the parties' employment contract and its breach of the contract is otherwise anticipated.

28.     After all, the employment contract neither conditions the "Exit Bonus" on Plaintiff's continued employment nor suggests that Plaintiff is not entitled to receive the "Exit Bonus" if terminated for cause or without cause.

29.     As a direct and proximate result of Defendant's breach, or anticipated breach of the parties' contract, Plaintiff has suffered and will suffer damages in excess of $75,000.

30.     Defendant Able is liable in breach of contract or anticipated breach of contract.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to:

A.     Grant judgment in favor of Plaintiff and against Defendant, on all counts;
B      Order Defendant to provide an accounting of the sale of any stake therein;
C.     Award Plaintiff money damages in excess of $75,000;
D.     Award Plaintiff its reasonable attorney fees, costs, disbursements, and interest, as provided by law; and
E.     Granting such other and further relief as the Court may deem just and proper.

## COUNT TWO
### Breach of covenant of good faith and fair dealing

31.     Plaintiff repeats and alleges all foregoing paragraphs as though set forth fully at length herein.

32.     At all times, the parties' contract imposes on each of them an obligation of good faith and fair dealing in its performance or enforcement.

33.     Whether or not the parties' contract provides for Plaintiff's termination without cause, Defendant was obligated to act in good faith and deal fairly until termination of the contract.

34.     Defendant breached its covenant to act in good faith and engage in fair dealing by virtue of its failure ever to explain its decision to terminate Plaintiff's employment. In fact, Plaintiff's co-director, Mr. Jae Ahn remains fully employed in the same role in spite of Ms. Yoo Jin Kim's unsubstantiated complaints about Defendant's performance in the United States.

35.     At all relevant times, Defendant acted with bad motives or intentions: Defendant deliberately terminated Plaintiff's employment for the sole purpose of avoiding its obligation to pay any "Exit Bonus" to Plaintiff. Defendant timed the termination purposely, well before the closing of the sale of IMM Holdings Inc.'s controlling stake in Able.

36.     Defendant's conduct has effectively denied Plaintiff of the bargain initially intended by the parties when entering into their employment contract. After all, Plaintiff was loyal to Defendant and discharged his director responsibilities to the best of his ability because he reasonably relied on Defendant's promises set forth in the parties' contract.

37.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in excess of $75,000, including, without limitation, the "Exit Bonus" promised under the contract.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to:

A.     Grant judgment in favor of Plaintiff and against Defendant, on all counts;
B      Order Defendant to provide an accounting of the sale of any stake therein;
C.     Award Plaintiff money damages in excess of $75,000;
D.     Award Plaintiff its reasonable attorney fees, costs, disbursements, and interest, as provided by law; and
E.     Granting such other and further relief as the Court may deem just and proper.

COUNT THREE
Promissory Estoppel

38.     Plaintiff repeats and alleges all foregoing paragraphs as though set forth fully at length herein.

39.     At all times, Defendant promised to pay Plaintiff a percentage of the sale of a controlling stake in Defendant: Defendant's promise to do so was and remains clear and definite.

9

40.     At the time Defendant made its promise to pay Plaintiff such an incentive, Defendant expected that Plaintiff would rely on the promise and perform his director duties loyally and diligently for the benefit of Defendant.

41.     All times, Plaintiff in fact reasonably relied on Defendant's promise to pay him a percentage of the sale of a controlling stake in Defendant insofar as he discharged his director duties diligently, faithfully and loyally.

42.     Rather than keep its promise to pay, or provide for the payment of Plaintiff's percentage share of said sale proceeds, Defendant instead terminated Plaintiff's relationship with Defendant altogether after having benefited from Plaintiff's hard work. In hindsight, Plaintiff's reliance on Defendant's promise caused Plaintiff to suffer a definite and substantial detriment in an amount in excess of $75,000, including the loss of the incentive payment originally promised by Defendant.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to:

A.      Grant judgment in favor of Plaintiff and against Defendant, on all counts;
B       Order Defendant to provide an accounting of the sale of any stake therein;
C.      Award Plaintiff money damages in excess of $75,000;
D.      Award Plaintiff its reasonable attorney fees, costs, disbursements, and interest, as provided by law; and
E.      Granting such other and further relief as the Court may deem just and proper.

## COUNT FOUR
Violation of the Conscientious Employee Protection Act, N.J.S.A. §34:19-1, *et seq.*

43.     Plaintiff repeats and alleges all foregoing paragraphs as though set forth fully at length herein.

44.     At all relevant times, Defendant was Plaintiff's "employer" and Plaintiff was Defendant's "employee" within the meaning of the Conscientious Employee Protection Act ("CEPA"). *See* N.J.S.A. §34:19-2(a)-(b).

45.     At all relevant times, Defendant has been importing and continues to import into the United States various OTC sunscreen products under the brand names "Missha" and "Apieu." Many of those products contain ingredients that are regulated by the FDA, which has long issued guidelines concerning the requirements for sunscreen active ingredients, and maximum sun protection factor (SPF) levels, among other things. Those ingredients are classified as "drugs" under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §301, *et seq*.

46.     Simply, "nonprescription sunscreen active ingredients" drugs which are "generally recognized as safe," or "GRASE," and are "not misbranded" may be lawfully imported into the United States, whereas those that are "not GRASE" and "misbranded" may not. 21 U.S.C. §360fff(2)-(4).

47.     Prior to importation, non-GRASE drugs must undergo a "new drug" application process before the FDA. 21 U.S.C. §§321(p), §355(a). Otherwise, the introduction, receipt, or delivery for introduction into interstate commerce of any

drug that is "misbranded" is a "prohibited act" under the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. §331.

48.     In or around April 2022, during a routine audit of Able's records for its imported sunscreen products, Plaintiff discovered that the commercial invoices presented to the United States upon importation are not consistent with Able's commercial invoices on file. While Able's actual invoices show many non-GRASE drug-containing OTC sunscreen products were shipped to the United States, the invoices presented to the United States for those same shipments were altered to show known GRASE drug-containing Able products. Plaintiff promptly notified Ms. Yoo Jin Kim of Able about his discoveries.

49.     At all relevant times, however, Able certainly did not commence or even inquire about any "new drug" application for the product that was unlawfully imported, sold and distributed in the United States. Able continued business "as usual."

50.     In fact, Able definitely knows that its actions were prohibited under federal law. When he investigated further, Plaintiff discovered that Able's customs broker previously had rejected Able's products in January 2021 due to the non-complying (non-GRASE) shipments exported to the United States. Able remain unfazed and continued its unlawful practice of switching invoices to mislead o

51.     Once Plaintiff alerted Able's chief executive officer, Ms. Kim, about his discovery in April 2022, Able purported to investigate the matter further. However, nothing but silence ensued. In hindsight, Able management in South Korea simply waited for Plaintiff's curiosity and concerns to wane and eventually disappear.

52.     Plaintiff continued in his inquiries, ultimately resulting in his termination "without cause," as explained above.

53.     Plaintiff's termination is a "retaliatory action" under CEPA. 34 N.J.S.A. §34:19-2(e).

54.     Defendant's retaliatory action took place because Plaintiff had disclosed to a supervisor, namely Able's chief executive officer, Able's activity, policy or practice that he reasonably believes to be in violation of law, rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to governmental entity. N.J.S.A. §34:19-3(a)(1).

55.     Alternatively, Plaintiff reasonably believed and still believes that Able's foregoing activity, policy or practice to be fraudulent or criminal. N.J.S.A. §34:19-3(a)(2).

WHEREFORE, Plaintiff respectfully requests the Honorable Court to:

A.     Grant judgment in favor of Plaintiff and against Defendant, on all counts;
B      Order Defendant to provide an accounting of the sale of any stake therein;
C.     Award Plaintiff money damages in excess of $75,000;

D.      Award Plaintiff its reasonable attorney fees, costs, disbursements, and interest, as provided by law (N.J.S.A. §34:19-5(e));

E.      Restrain any CEPA violation which is continuing (N.J.S.A. §34:19-5(a));

F.      Order the reinstatement of Plaintiff to his original position held before the retaliatory action (N.J.S.A. §34:19-5(b));

G.      Order reinstatement of Plaintiff's fringe benefits and seniority rights (N.J.S.A. §34:19-5(c));

H.      Award all lost wages, benefits and other remuneration to which Plaintiff is entitled but for the retaliatory action (N.J.S.A. §34:19-5(d));

I.      Award punitive damges; and

J.      Granting such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

LEE, LLC
*Attorneys for Plaintiff*

/s/ Peter Y. Lee (PL-2405)

Date: May 12, 2023                   By:_____

PETER Y. LEE, ESQ.