

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000   201-489-1536 fax

New York

Delaware

Maryland

Texas

Florida

Eric S. Latzer
Member
Admitted in NJ and NY

Reply to New Jersey Office
Writer's Direct Line: 201.525.6281
Writer's Direct Fax: 201.678.6281
Writer's E-Mail: ELatzer@coleschotz.com

April 22, 2024

**<u>Via Electronic Case Filing</u>**
Honorable Jose R. Almonte
United States District Court, District of New Jersey
Frank R. Lautenberg U.S. Post Office & Courthouse Building
2 Federal Square
Newark, NJ 07102

      Re:     Chang v. Able C&C Co. Ltd., Civil Action No. 23-cv-02590-KSH-JRA

Dear Judge Almonte:

      This firm represents Defendant in the above-captioned matter. We write in response to Plaintiff's correspondence filed early this morning. (Dkt. No. 44). Before explaining why the Court should deny Plaintiff's request for a 30-day extension of the May 2 deadline it set for Plaintiff to conduct the deposition of Joshua Lim, Esq., we feel compelled to first address Plaintiff's blatant mischaracterization of the two retainer agreements attached to his correspondence.

      Plaintiff summarily describes the agreements as "Mr. Chang's" agreements "with Mr. Lim and his law office[.]" (Dkt. No. 44). This description is demonstrably false. The agreements are unquestionably between ***Defendant*** (specifically, Defendant's U.S. subsidiary) and its corporate counsel, Mr. Lim's law firm. Indeed, the signature pages confirm that Plaintiff, as co-Chief Executive Officer, signed the engagement agreements on behalf of Defendant—***not*** himself:[1]

| ☑ CORPORATE CLIENT | ☑ CORPORATE CLIENT |
|---|---|
| On behalf of Corporate Client: | On behalf of Corporate Client: |
| Signature: _(signed)_ | Signature: _(signed)_ |
| Print: Sehoon Chang | Print: Sehoon Chang |
| Title: CEO | Title: Co-CEO |
| Dated: April 10, 2020 | Dated: Dec 23, 2020 |

---

[1] The December 23, 2020 agreement attached to Plaintiff's filing is unsigned. We are not filing a fully executed copy of the agreement because it is privileged. We have, however, included an image of the signature block.

Case 2:23-cv-02590-KSH-JRA   Document 45   Filed 04/22/24   Page 2 of 4 PageID: 390



Honorable Jose R. Almonte
April 22, 2024
Page 2

The signature blocks for "Individual Client" are unsigned in both agreements and, in fact, the box was *crossed out* in the April 10, 2020 agreement:

Consistent with the signature pages, the box for "Corporate Client" is checked off on the first page of the agreements. (Dkt. 44-1 at 2; 44-2 at 2). The box for "Individual Client[,]" however, is not:

The scope of representations set forth in the agreements further demonstrate that Defendant—not Plaintiff—retained Mr. Lim. Specifically, the April 10, 2020 agreement reflects that Mr. Lim was retained for "Merger and Acquisition" and "Labor/Employment" work, including specifically (by way of examples) to review Defendant's "employment contracts"; "advise client on potential claims arising from terminated employees"; and "[p]repare employment contracts for hire of new employees." (Dkt. No. 44-1 at 3). Of course, none of these tasks pertain to Plaintiff, individually. The December 18, 2020 agreement similarly reflects that Defendant retained Mr. Lim as "Outside Counsel" to advise on "[a]ll Legal Issues" and for "General Counseling[.]" (Dkt. No. 44-2 at 3, 2).

In sum, Plaintiff's contention that the engagement agreements were between him, individually, and Mr. Lim's law firm is dead wrong.

Plaintiff's introduction of the engagement agreements represents his latest failed attempt at trying to provide this Court with *something* to support his baseless "conflict" claim. By way of recap:

- On March 26, 2024, Plaintiff filed with the Court a copy of a $5,000 retainer check paid to Defendant which, he claimed, evidences that Mr. Lim represented Plaintiff individually. (Dkt. No. 32). In response, we provided documentary evidence confirming that Defendant reimbursed Plaintiff for the payment—it did so because Mr. Lim was retained to represent Defendant, not Plaintiff. (Dkt. No. 33).

66365/0002-47539373v1



Honorable Jose R. Almonte
April 22, 2024
Page 3

- By filing dated March 27, 2024, Plaintiff did not dispute that he was reimbursed for the retainer, nor has he ever. (Dkt. No. 34). Instead, Plaintiff filed a text message in which Mr. Lim requested that Plaintiff provide an update regarding legal fees owed by Defendant. (Dkt. No. 34-1). Plaintiff did not explain, nor can he, how this text message—a lawyer (Mr. Lim) requesting that a company's chief executive officer (Plaintiff) provide an update regarding legal fees—remotely supports his "conflict" claim. It does not.

- On April 2, 2024, this Court conducted a conference at which it addressed Plaintiff's "conflict" claim. The Court repeatedly questioned Plaintiff's counsel regarding the basis for alleging a "conflict"—and counsel, in response, offered nothing other than vague and non-specific allegations. In fact, counsel could not even explain whether his client is claiming he had a prospective or actual attorney-client relationship with Mr. Lim. At the conclusion of the conference, the Court said it was "very, very skeptical" of Plaintiff's claim,[2] but afforded Plaintiff 30 days—until May 2, 2024—to conduct Mr. Lim's deposition. The Court memorialized its ruling by text order entered on April 3. (Dkt. No. 42).

The deadline for Plaintiff to complete Mr. Lim's deposition was crystal clear. (Dkt. No. 42 ("***By May 2, 2024, Plaintiff shall conduct the deposition of [Joshua] Lim, Esq[]***." (emphasis added))). Nevertheless, following the conference, Plaintiff and his counsel sat on their hands and inexplicably waited *two weeks*, until April 16, to serve Mr. Lim with a subpoena. Plaintiff's counsel offers no explanation for why he failed to expeditiously serve a subpoena.

Aside from waiting weeks to serve a subpoena, Plaintiff attempted to circumvent this Court's April 3 Order by serving Mr. Lim and his firm with **a total of four subpoenas**, a subpoena issued from this Court and three additional subpoenas issued out of the state court lawsuit that Defendant's U.S. subsidiary is pursuing against Chang. (Copies of the state court subpoenas are attached as Exhibit A). Through the subpoenas, Plaintiff is demanding that Mr. Lim sit for a lengthy deposition—far longer than the two hours allotted by the Court—ostensibly regarding issues that are entirely unrelated to the two topics identified in the Court's Order. (Dkt. No. 42 ("The deposition shall be limited to two topics: (1) whether an attorney-client relationship existed between Mr. Lim and Plaintiff Seehoon Chang ('Chang'), in his individual capacity, either as an actual or prospective client; and (2) if an attorney-client relationship existed, whether that representation relates to any claims or defenses raised in this action.")).[3]

---

[2] Contrary to Plaintiff's correspondence, the Court did not "express[] skepticism about Plaintiff's claim" simply "due to the absence of any retainer agreement[.]" (Dkt. No. 44). Rather, the Court expressed skepticism because of the absence of any support, whatsoever, for Plaintiff's "conflict" claim.

[3] The state court subpoenas demand that Mr. Lim sit for a deposition on the morning of April 29, (Exhibit A), and the federal court subpoena demands that Mr. Lim sit for a deposition that same afternoon, (Dkt. No. 44-3). The state court subpoenas also demand that Mr. Lim and his

66365/0002-47539373v1



Honorable Jose R. Almonte
April 22, 2024
Page 4

      Despite Plaintiff's failure to expeditiously issue a subpoena, and his efforts to circumvent this Court's April 3 Order, Mr. Lim *still* attempted to accommodate Plaintiff's request for a deposition. Specifically, upon receipt of the subpoenas, Mr. Lim advised Plaintiff's counsel that he is not available on the date noticed in the subpoenas, April 29, due to a trial. Mr. Lim, however, offered ***two alternative dates*** for his deposition, April 22 and April 25—both of which fall before the May 2 deadline. (Attached as Exhibit B are Plaintiff's counsel's correspondence with Mr. Lim's office). Plaintiff's letter to the Court makes no mention of Mr. Lim's efforts to accommodate him, nor has Plaintiff's counsel explained why he cannot take Mr. Lim's deposition on April 22 or April 25. Plaintiff would have the Court believe that Mr. Lim's trial is the reason why Plaintiff cannot timely complete Mr. Lim's deposition. But in truth Plaintiff's counsel's own lack of diligence in issuing the subpoena, and his unexplained unavailability on April 22 and April 25, are the real reasons.

      Against this backdrop, the Court should deny Plaintiff's request for an extension of the May 2 deadline to complete Mr. Lim's deposition. Plaintiff has no excuse for failing to take steps that would enable him to complete Mr. Lim's deposition within the allotted time. Timing aside, Plaintiff's failure to introduce a single piece of evidence that remotely supports his "conflict" claim—despite multiple Court filings—demonstrates that Plaintiff is attempting to take Mr. Lim's deposition as part of a fishing expedition to establish a conflict where none exists.

      The Court should also deny Plaintiff leave to file what would amount to a frivolous application seeking Cole Schotz's disqualification. It bears repeating: Plaintiff has not produced a single piece of evidence that even remotely supports his "conflict" claim. Absent this Court's intervention, it is clear that Plaintiff and his counsel will continue to allege a "conflict" without any factual or legal basis to do so. Their conduct should not be countenanced, and their request for relief should be denied in all respects.

      Respectfully,

      COLE SCHOTZ P.C.

      */s/ Eric S. Latzer*

      Eric S. Latzer

---

firm, by no later than April 29, produce seventeen categories of documents which appear to have nothing to do with Plaintiff's alleged "conflict" claim. (Exhibit A).