# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SEHOON CHANG, | Civil Action No. |
| Plaintiff, |  |
| v. | 23-cv-02590 (KSH) (JRA) |
| ABLE C&C CO. LTD., | **OPINION** |
| Defendant. |  |

## José R. Almonte, U.S.M.J.

Defendant Able C&C Co. Ltd. ("Defendant" or "Able South Korea") moves to disqualify Peter Y. Lee, Esq. ("Mr. Lee"), counsel for Plaintiff Sehoon Chang ("Plaintiff" or "Mr. Chang") (the "Motion"). ECF Nos. 82, 84. Plaintiff opposes the Motion. ECF No. 83. Disqualifying an attorney from a case is a drastic measure, one that has adverse pecuniary ramifications for the client and potential cataclysmic impact on the attorney's professional reputation. The ripple effects cannot be measured. Unfortunately, this is one of those cases where such a drastic measure is warranted, marking at least the third time that Mr. Lee has been sanctioned by a court. For the reasons set forth below, Able South Korea's Motion is **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

The Motion arises out of the parties' dispute concerning Mr. Lee's handling of privileged information in his capacity as attorney for Sehoon Chang, the Plaintiff.

Some background information is necessary to place this dispute in context.  Plaintiff entered into an employment contract with Able C&C Co. Ltd. ("Able South Korea"), a South Korean entity with a subsidiary in the United States, Able C&C US, Inc. ("Able USA").  Though hired by Able South Korea, Plaintiff worked for Able USA as a co-Chief Executive Officer ("co-CEO").  Eventually, Plaintiff was fired.  He claims he was wrongfully terminated after inquiring about an "exit bonus" and voicing concerns regarding potential fraud in Able South Korea's operations.  *See generally* Amended Compl., ECF No. 73.  Those allegations form the basis of the operative complaint, which asserts that Able South Korea breached the covenant of good faith and fair dealing and violated the Conscientious Employee Protection Act, codified as N.J.S.A § 34:19-1.[1]  *See generally id.*

This case has been contentious from the beginning, starting with Plaintiff attempting to disqualify Able South Korea's counsel, the law firm Cole Schotz P.C. ("Cole Schotz").  In that endeavor, Plaintiff claimed that Cole Schotz had a conflict of interest because it obtained information about this case from Joshua Lim, an attorney at Kim, Lim & Partners–Able South Korea's outside general counsel.  And, according to Plaintiff, he believed Mr. Lim represented him in his individual capacity.  So, when Plaintiff spoke with Mr. Lim about Able South Korea's potential fraud, Plaintiff believed that Mr. Lim was his attorney, not Able South Korea's outside general counsel.  *See* ECF Nos. 31-34.  Able South Korea has always maintained that Mr. Lim served as its outside corporate counsel and never represented Plaintiff in an

---

[1] The Honorable Katharine S. Hayden, U.S.D.J., dismissed Plaintiff's breach of contract claim and promissory estoppel claim on May 21, 2024.  *See* ECF No. 53.

individual capacity.  To help resolve that issue, the Court ordered that Plaintiff be permitted to depose Mr. Lim, so that the Court could have greater clarity as to the extent of the relationship between Mr. Lim and Plaintiff.  *See* ECF No. 42.  After considering Mr. Lim's deposition, the retainer agreements at issue, and several dispute letters regarding this issue, the Court denied Plaintiff's request to disqualify Cole Schotz, finding that Plaintiff failed to establish an attorney-client relationship, or even a prospective attorney-client relationship, with Mr. Lim in Plaintiff's individual capacity.  *See generally* ECF Nos. 80-81.

That should have ended the dispute.  But in the course of resolving that dispute, Able South Korea learned that Plaintiff and his counsel, Mr. Lee, were in possession of various privileged and confidential documents that Plaintiff obtained without authorization while he was co-CEO for Able USA.  Three of these documents form the basis of this Motion.  The first document, labeled Exhibit JL-2, is an email chain from April 2020 between Mr. Lim and Plaintiff related to the scope of Mr. Lim's work, fees, and negotiations regarding one of the retainer agreements, as well as legal advice regarding a concern with Able South Korea.  The second document, labeled Exhibit JL-5, is an email from Mr. Lim and another member of his firm to Plaintiff attaching a legal memorandum related to regulatory requirements pertinent to Able South Korea's product.  The final document is the legal memorandum attached to Exhibit JL-5 (collectively, these three documents are referred to as the "Privileged Documents").  Able South Korea first learned that Plaintiff and Mr. Lee possessed the Privileged Documents when Mr. Lee introduced some of them at Mr. Lim's

deposition and attempted to question Mr. Lim about them. *See* Lim Dep. Tr. 27:15–46:16, ECF No. 82-2 at 21-101. Able South Korea promptly asserted privilege over those documents. *See id*. 33:10-48:5. The exchange between counsel matters:

> **Able South Korea's Counsel**: Hold on. We object to the introduction of this document. This is privileged, privileged and confidential. And I'm going to be clear again on this, [Mr. Lee], the law in New Jersey is very clear that when a corporation holds a privilege, the privilege passes along with new management. So the fact that at one time your client may have been the co-CEO of the company does not mean that he currently holds Able US's privilege. So to the extent he has privileged and confidential information, he is not to disclose it and you cannot introduce it in this deposition.

> **Mr. Lee**: Introducing something in a deposition is entirely different from introducing it as evidence in a trial.

> **Able South Korea's Counsel**: It's not.

> **Mr. Lee**: I beg to differ. So we agree to disagree on that. . . .

> . . . .

> **Mr. Lee**: Okay. This [exhibit] helps put things in context and move things along.

> **Able South Korea's Counsel**: That's irrelevant to me. It's a privileged and confidential communication.

> **Mr. Lee**: But I'm not going to ask substantive information. Obviously, I didn't produce the actual document that attaches to this email.

> **Able South Korea's Counsel**: It doesn't matter to me. It's privileged and confidential.

> . . . .

> **Mr. Lee**: I'm only going to ask for a yes or no. Okay?

> **Able South Korea's Counsel**: That doesn't matter either.

> **Mr. Lee**: But nevertheless, you can't block me –

> **Able South Korea's Counsel**: I can.

**Mr. Lee**: -- from asking questions. What you can do is preserve your objection –

**Able South Korea's Counsel**: No.

**Mr. Lee**: Hang on. . . . Let me finish. Okay? If we want to revisit it later, fine, we can tell him not to answer and we can note it with the time and then revisit it later in front of the judge. But what I'm trying to say is let me establish a record. Please let me do that . . . and then later before Judge Almonte we can bring it up.

**Able South Korea's Counsel**: I am establishing an objection to the introduction of this document because it's privileged and confidential. That's what I'm doing.

**Mr. Lee**: Okay. So [Able South Korea's counsel] refuses or wants – does not want JL-5 to see the light of day. Is that what you're saying?

**Able South Korea's Counsel**: That's how it works.

**Mr. Lee**: Okay.

*Id.* 44:10-48:6.

No one disputes that Mr. Lee never produced these documents to defense counsel prior to the deposition. Nor does anyone dispute that the day after Mr. Lim's deposition, rather than raising the privilege issue with the Court, Mr. Lee filed the same privileged documents on the public docket in a related action pending in state court in which Able South Korea is suing Plaintiff: *Able C&C US, Inc. v. Sehoon Chang, et al.*, BER-L-3844-23 (N.J. Super. Ct. Law Div. 2023) ("State Court Action"). Decl. of Eric S. Latzer ("Latzer Decl.") ¶ 10, ECF No. 82-2 at 1-5. Immediately after the filing of the privileged documents on the public docket of the State Court Action, counsel for Able South Korea emailed Mr. Lee demanding the return of those documents. Latzer Decl. ¶¶ 11-12, Ex. 4 at 1, ECF No. 82-2 at 102-04. Mr. Lee did not respond to that email. *Id.* ¶ 12. Instead, Mr. Lee filed a letter on the public docket

in this case, attaching the same documents over which Able South Korea was claiming privilege.  ECF Nos. 55-2, 55-4.  Able South Korea's counsel contacted Mr. Lee, again, and demanded the return of privileged materials, as well as the return of documents containing Mr. Lim's bank account information, which also were filed on the docket.  Latzer Decl. Ex. 6, ECF No. 82-2 at 132-36.  Mr. Lee agreed to remove the banking information from the docket, but he remained silent as to the privileged material.  *See id.*  Mr. Lee's refusal to return the documents prompted Able South Korea to file a motion to seal, which the Court granted after finding that the material in dispute contained confidential, attorney-client privileged communications.[2]  ECF No. 78.  All the back and forth culminated with Able South Korea filing the instant Motion seeking disqualification of Mr. Lee, sanctions against Plaintiff and Mr. Lee, and certain other remedies to mitigate the damage resulting from Plaintiff's and Mr. Lee's conduct.  *See generally* ECF No. 82.

On December 17, 2024, the Court held a hearing to address Able South Korea's Motion, and at the hearing, Plaintiff argued, for the first time, that Able South Korea, the named defendant in this action, did not have standing to assert privilege over the Privileged Documents because Able USA, not Able South Korea, is listed as the client in Mr. Lim's retainer agreements.  *See generally* ECF Nos. 99, 105-107.  The Court reserved judgment pending further briefing on this standing issue, which the parties later submitted.  ECF Nos. 105, 107.

---

[2] Plaintiff opposed the motion.  *See* ECF No. 74-2.

## LEGAL STANDARD

Federal practitioners in New Jersey are bound by the same ethical obligations that the state Supreme Court promulgated under the New Jersey Rules of Professional Conduct ("RPC"). *See Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 732 (D.N.J. 1995); L.Civ.R. 103.1(a). Two rules are particularly relevant to this Motion. The first is RPC 4.4(b), which dictates what lawyers must do when coming into possession of unauthorized privileged documents. RPC 4.4(b) provides that,

> A lawyer who receives a document or electronic information and has reasonable cause to believe that the document or information was **inadvertently sent** shall not read the document or information or, if he or she has begun to do so, shall stop reading it. The lawyer shall (1) promptly notify the sender (2) return the document to the sender and, if in electronic form, delete it and take reasonable measures to assure that the information is inaccessible.

> A lawyer who receives a document or electronic information that contains privileged lawyer-client communications involving an adverse or third party and who has reasonable cause to believe that the document or information was **wrongfully obtained** shall not read the document or information or, if he or she has begun to do so, shall stop reading it. The lawyer shall (1) promptly notify the lawyer whose communications are contained in the document or information (2) return the document to the other lawyer and, if in electronic form, delete it and take reasonable measures to assure that the information is inaccessible. A lawyer who has been notified about a document containing lawyer-client communications has the obligation to preserve the document.

N.J. R.P.C. 4.4(b) (emphasis added). Therefore, an attorney is ethically obligated to follow the "cease, notify, and return" protocol prescribed by RPC 4.4(b) when possessing an adversary's privileged documents, regardless of whether the information was "inadvertently" transmitted to an attorney or was otherwise "wrongfully obtained." *See Maldonado v. New Jersey ex rel. Admin. Off. of Cts.-Prob. Div.*, 225 F.R.D. 120, 138 (D.N.J. 2004).

7

The second relevant RPC is 8.4(d), which prohibits lawyers from "engag[ing] in conduct that is prejudicial to the administration of justice." As one court observed, "it is well established that an attorney may not do indirectly that which is prohibited directly . . . and consequently the lawyer cannot be involved in the subsequent review of evidence obtained improperly by the client." *Maldonado*, 225 F.R.D. at 138 (citing the New Jersey Supreme Court Advisory Comm. on Pro. Ethics Op. 680, 139 N.J. L.J. 240 (Jan. 16, 1995)).

Violations of the RPC are grounds to disqualify counsel. *See id.* at 137-38; *Sanchez v. Maquet Getinge Grp.*, No. A-4994-15T4, 2018 WL 2324679, at *6-7 (N.J. Super. Ct. App. Div. May 23, 2018) (affirming disqualification of plaintiff's counsel for violations of RPC 4.4); *Strategic Env't Partners, LLC v. Bucco,* No. 13-cv-5032, 2014 WL 6065816, at *3-4 (D.N.J. Nov. 12, 2014) (considering disqualification in the context of a violation of RPC 4.4). When deciding whether a violation of the RPC warrants disqualification, courts consider the following factors:

1) whether the attorney knew or should have known that the material was privileged;

2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3) the extent to which the attorney reviews and digests the privileged information;

4) the significance of the privileged information, *i.e.*, the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;

5) the extent to which movant may be at fault for the unauthorized disclosure; and

6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney.

*See Maldonado*, 225 F.R.D. at 139.

It is the movant's burden to demonstrate that disqualification of an attorney is appropriate. *In re C.G.*, No. 17-cv-12179, 2018 WL 11241632, at *2 (D.N.J. May 14, 2018); *Bell v. Cumberland Cnty.*, No. 09-cv-6485, 2012 WL 1900570, at *2 (D.N.J. May 23, 2012). This is a heavy burden to meet with a high standard of proof. *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998). "Motions to disqualify are viewed with disfavor as disqualification is a drastic remedy with often far-reaching, sometimes devastating implications." *Id.* That is why courts should "hesitate to impose [disqualification] except when absolutely necessary." *Carlyle Towers Condo. Ass'n v. Crossland Sav.*, *FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (internal quotations omitted). "In considering disqualification, courts must be mindful that the interests of the clients are primary, and the interests of the lawyers are secondary." *Maldonado*, 225 F.R.D. at 137. Therefore, courts must "balance the need to maintain the highest standards of the [legal] profession against a client's right to freely choose his counsel." *Steel*, 912 F. Supp. at 733 (internal quotations omitted).

## **DISCUSSION**

This Motion requires the Court to address several issues in sequence: first, whether Able South Korea, the company that employed Plaintiff as co-CEO of its subsidiary, has standing to claim privilege over the documents in dispute; second, whether the documents at issue are protected by the attorney-client privilege; third,

whether, under the totality of circumstances, Mr. Lee should be disqualified as Plaintiff's counsel and whether both Plaintiff and Mr. Lee should be subject to sanctions; and finally, whether the Court should impose other measures to mitigate any prejudice to Able South Korea.  As explained below, (1) Able South Korea has standing to bring this Motion, (2) the documents at issue are protected by the attorney-client privilege, (3) given Mr. Lee's conduct, the Court is left with no choice but to disqualify him as Plaintiff's counsel and impose sanctions against Mr. Lee but not Plaintiff, and (4) certain other measures are appropriate to cure the harm caused by the inappropriate retention and use of privileged documents.

## A. <u>Standing</u>

First, the Court must address the threshold issue of whether Able South Korea, as the parent company to Able USA, has standing to assert attorney-client privilege over the documents in dispute.  In the context of standing to assert privilege, "courts should treat the various members of the corporate groups as the separate corporations they are and not as one client." *Hoffmann-La Roche, Inc. v. Roxane Lab'ys, Inc.*, No. 09-cv-6335, 2011 WL 1792791, at *6 (D.N.J. May 11, 2011) (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 372 (3d Cir. 2007)).  That legal protection is not absolute.  The Third Circuit recognizes a "joint-client" privilege, meaning that

> the separate corporate members of a larger corporate family can be considered *joint* clients of the same in-house counsel for purposes of the privilege, regardless of which specific company employs the lawyer: "it makes sense ... that the members of the corporate family are joint clients. This reflects both the separateness of each entity and the reality that they are all represented by the same in-house counsel whether that

10

counsel typically takes up office with the parent or a subsidiary," and any other result, "would wreak havoc on corporate counsel's office."

*Margulis v. Hertz Corp.*, No. 14-cv-1209, 2017 WL 772336, at \*6 (D.N.J. Feb. 28, 2017) (quoting *In re Teleglobe Commc'ns,* 493 F.3d at 372). New Jersey laws also recognize the "joint-client" privilege doctrine. *See Edison Corp. v. Town of Secaucus*, 17 N.J. Tax 178, 185 (N.J Tax Ct. 1998) (holding attorney-client privilege applied to communications between the attorney for a subsidiary and an employee of a parent company); *Ashland Inc. v. G-I Holding, Inc.*, No. A-4356-17T3, 2019 WL 1552750, at 3\* (N.J Super. Ct. App. Div. Apr. 10, 2019) (holding that privilege can be waived as between co-clients in adverse proceedings).

Here, the Court is satisfied that Able South Korea has standing to assert privilege over the documents at issue. Plaintiff was the co-CEO of Able USA, but his employment contract was with the parent company, Able South Korea–the named defendant in this action. Amended Compl. ¶¶ 13-15. Plaintiff has represented that he and his co-CEO "took orders only from ***Defendant's*** management team in South Korea" and "reported only to ***Defendant's*** management team in South Korea[.]" ECF No. 6-3 ¶ 9 (emphasis added). Moreover, Able USA "exercised no discretion or autonomy because it had none[.]" *Id.* Though separate legal entities, it is apparent to the Court that Able USA and Able South Korea are inextricably intertwined, such that they appear to operate as one entity.

Against this backdrop, on April 10, 2020, and again on December 18, 2020, Plaintiff, in his capacity as co-CEO of Able USA, signed retainer agreements with Mr. Lim's firm on behalf of "Able C&C US, Inc." (*i.e.,* Able USA). ECF Nos. 44-1 and 44-

2.  The fact that Able South Korea is not expressly listed as a client in the agreements is not fatal to its ability to assert privilege for purpose of this Motion.  Mr. Lim confirmed in his deposition that he acts as general counsel for Able South Korea, such that a joint-client relationship exists between Able South Korea and Able USA.  *See* Lim Dep. Tr. 5:19–6:12.  Although it is unclear when exactly Mr. Lim began representing Able South Korea, it is undisputed that Mr. Lim represents both entities and that his work for Able USA promoted Able South Korea's interests in the United States.  *See* Lim Dep. Tr. 11:9–18 ("[M]y understanding is that to this day, [Plaintiff] was hired by headquarters in Korea to run the company Able USA . . . .").  Indeed, one of the Privileged Documents, Exhibit JL-2, leaves no doubt that Mr. Lim's work was subject to the approval of Able South Korea as it expressly contemplates Able South Korea's approval of his fee structure.  When considering the totality of the circumstances, I find that there is a joint-client relationship between Able South Korea and Able USA such that Able South Korea has standing to assert privilege over the documents at issue.[3]

### B. Privilege

Having found that Able South Korea has standing to assert privilege over the disputed documents, the Court now turns to whether the documents are indeed privileged.  "[Q]uestions related to the attorney-client privilege . . . must be analyzed under New Jersey law because this Court retains jurisdiction based on the parties'

---

[3]  The parties also seem to dispute whether Plaintiff "waived" this standing argument by failing to raise this in his opposition to the Motion.  *See* ECF Nos. 105 at 1 n.1; 107 at 4.  This point is moot because of the Court's finding that Able South Korea has standing to assert privilege as a joint client.

diversity of citizenship." *Columbus Life Ins. Co. v. Wilmington Trust, N.A.*, 344 F.R.D. 207, 217 (D.N.J. 2023) (citing Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.")); *see also Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 237 n.3 (D.N.J. 2022) (citation omitted) ("When a case is based on federal diversity jurisdiction, courts are to decide issues of attorney-client privilege based on state law."). In New Jersey, the attorney-client privilege "applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." *Columbus Life Ins. Co.*, 344 F.R.D. at 217 (quoting *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. Super. Ct. App. Div. 2013)).

Able South Korea argues the documents are "plainly protected by attorney-client privilege" because they were exchanged between Plaintiff, in his capacity as co-CEO of Able USA, and Mr. Lim, as outside counsel for Able South Korea and Able USA. ECF No. 82-1 at 19 n.4. Plaintiff does not dispute the privileged nature of the documents. But he argues that he is rightfully in possession of the Privileged Documents because he reasonably believed that he held the privilege as Mr. Lim's individual client. *See generally* ECF No. 83.

After review of the Privileged Documents, the Court finds that Able South Korea has met its burden of establishing that the documents at issue are privileged. *Wachtel v. Guardian Life Ins. Co.*, No. 01-cv-4183, 2006 WL 1286188, at *1 n.1 (D.N.J. May 8, 2006) ("The burden of demonstrating the existence of the privilege is on the

13

party asserting it."). The Privileged Documents consist of email chains and a legal memorandum exchanged between Plaintiff and Mr. Lim. The first email chain, Exhibit JL-2, not only concerns the scope of Mr. Lim's work as corporate counsel and Mr. Lim's fees, but it also gives legal advice about a transaction. Generally, "[m]atters such as the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed, are usually not protected by the attorney-client privilege." *Spiniello Cos. v. Hartford Fire Ins. Co.*, No. 07-cv-2689, 2008 WL 2775643, at *3 (D.N.J. July 14, 2008); *see also SBA Fin., L.L.C. v. Bloom,* No. A-2296-11T2, 2013 WL 2359730, at *2 n.2 (N.J. Super. Ct. App. Div. May 31, 2013) ("[T]he fact of a retainer, or the identity of the person paying an attorney's fee, are generally not within the attorney-client privilege."). However, where "a document contains more than a general description of the work to be performed, and in fact reveals a client's motive for representation, specific areas of concern, or anticipated areas of research, the document is protected by the privilege." *Spiniello*, 2008 WL 2775643, at *3. In addition to discussing Mr. Lim's fees, certain emails in the chain discuss the specific work Mr. Lim was hired for and the legal topics for which his advice was expected. Given the specificity of the discussions in this email chain, I find that Exhibit JL-2 is privileged.

The privileged nature of the second email chain, Exhibit JL-5, and the legal memorandum attached to it is not even a close question. Those documents are undoubtedly privileged. They contain legal advice for matters related to Able South Korea's line of business. *See Paff v. Div. of Law*, 988 A.2d 1239, 1244-45 (N.J. Super.

Ct. App. Div. 2010) (recognizing that attorney-client privilege protects confidential communications made between an attorney and client for the purpose of obtaining or providing legal assistance to the client); *see also Hedden*, 82 A.3d at 245 ("[T]here is a presumption that a communication made in the lawyer-client relationship has been made in professional confidence. . . . If the purpose was to solicit legal advice, then the privilege applies.").

It strains credulity that Mr. Lee, an attorney, could have reasonably believed that Plaintiff rightfully held the privilege. It is well-settled that management for corporations holds the authority to assert and waive the corporation's attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985). Former management does not have the authority to assert or waive this attorney-client privilege over the wishes of current management. *See id*.; *see also In re Est. of Fedor*, 811 A.2d 970, 972 (N.J. Super. Ct. Ch. Div. 2001) ("In the corporate setting, it is clear that the corporate attorney-client privilege can only be claimed by those who currently control the corporation[.]"). Upon Plaintiff's termination as Able USA's co-CEO, Plaintiff lost any right to possess the documents at issue, and only Able USA's and Able South Korea's current management hold the right to assert and waive the privilege.

Mr. Lee emphasizes that the communications at issue were not "inadvertent disclosures" and were purposely sent to Plaintiff, thus justifying his possession. This ignores the fact that the communications were sent to Plaintiff ***in his capacity as co-CEO for Able USA.*** Plaintiff provides no case law to support the position that

upon Plaintiff's termination, wrongful or not, he was entitled to retain those documents.  Case law supports the contrary.  *See Commodity Futures Trading Comm'n*, 471 U.S. at 349; *In re Est. of Fedor*, 811 A.2d at 972; *Sanchez*, 2018 WL 2324679, at \*5 (affirming a lower court's finding that the plaintiff, who was former management for the defendant, was required to return privileged documents to the defendant after the plaintiff removed them from the defendant employer's custody).

Moreover, and as the Court already stated at the September 10, 2024 hearing, nothing in the record supports a finding that Mr. Lim represented Plaintiff in his individual capacity.  Far from it.  The retainer agreements signed by Plaintiff in his capacity as co-CEO make clear that the intended client was Able USA.  Mr. Lim confirmed as much at his deposition, noting that he represents Able USA, not Plaintiff in his individual capacity.  *See* Lim Dep. Tr. 5:5–6:12; 24:5–25:12.  It is worth reiterating the Court's prior ruling: "[P]laintiff did not share an attorney-client relationship with Mr. Lim or his law firm," and "there never was a 'prospective client relationship.'" Sept. 10, 2024 Hr'g Tr. 15:11-15, ECF No. 82-2 at 137-74.  There is no basis for Plaintiff's argument that he reasonably believed he held the privilege over the Privileged Documents.  Even if Plaintiff, as a non-lawyer, believed Mr. Lim represented him in his individual capacity, it is hard to fathom how Mr. Lee, Plaintiff's lawyer, could have reasonably held the same belief.  At all relevant times, Able South Korea and Able USA, not Plaintiff, were the holders of attorney-client privilege, and no one has argued that the privilege was waived.  Therefore, the Privilege Documents are protected by the attorney-client privilege.

**C. RPC 4.4(b) and RPC 8.4(d)**

Next, the Court must consider whether Mr. Lee violated the RPC. It bears emphasizing that attorneys should not engage in self-help once they are notified that documents in their possession could be subject to attorney-client privilege. RPC 4.4(b) makes it clear that a lawyer "who receives" attorney-client communication which the lawyer reasonably believes "was wrongfully obtained shall not read the document or information or, if he or she has begun to do so, shall stop reading it." N.J. R.P.C. 4.4(b). The attorney has an affirmative obligation to "cease, notify, and return" the information. *Maldonado*, 224 F.R.D. at 138-39. Failure to do so is a flagrant violation.[4]

Mr. Lee's conduct, even when giving him the benefit of the doubt, evinces blatant disregard for the letter and spirit of RPC 4.4(b). Able South Korea first discovered that Mr. Lee possessed privileged documents and communications at Mr. Lim's deposition. Why Mr. Lee did not produce these documents to Able South Korea

---

[4] Rule 26(b)(5) of the Federal Rules of Civil Procedure also provides guidance for instances when documents are subject to a claim of privilege. The Rule states, in relevant part,

> If information produced in discovery is subject to a claim of privilege . . . the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

Fed. R. Civ. P. 26(b)(5). Mr. Lee's actions after Able South Korea asserted the claim of privilege clearly violate the mandate under Rule 26(b)(5). *See Strategic Env't Partners, LLC v. Bucco*, No. 13-cv-5032, 2014 WL 6065816, at *4 (D.N.J. Nov. 12, 2014) ("The Court need not consider whether the Email is actually privileged or whether any such privilege was subsequently waived because, for purposes of RPC 4.4 and Rule 26, it suffices that Defendants made a claim of privilege."). New Jersey law also comports with this standard. *See Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 655 (N.J. 2010).

prior to the deposition raises another concern, but not one that the Court needs to address here.    In any event, Able South Korea immediately objected and unequivocally made its position clear to Mr. Lee that the information he possessed was privileged, belonging to Able South Korea.  *See* Lim Dep. Tr. 33:10–48:5.  Able South Korea also demanded that those documents be returned.  *See id.*; Latzer Decl. ¶¶ 11-15.  Mr. Lee could have enlisted the Court's help to challenge Able South Korea's assertion.  Instead, he decreed that the documents were not privileged.  He filed the same documents—the ones he had been warned were potentially privileged—on the public docket in the State Court Action.  Latzer Decl. ¶ 10.  After filing these documents on the public docket, Mr. Lee had yet another opportunity to make things right.  Able South Korea's counsel emailed Mr. Lee, demanding the return of confidential and privileged documents.  *Id.* ¶ 11, Ex. 4.  Mr. Lee did not respond to that email.  *Id.* ¶ 12.  Rather, Mr. Lee filed a letter on the docket in this case, attaching the same allegedly privileged documents.  ECF Nos. 55-2, 55-4. Incredibly, Mr. Lee did not file the documents under seal, leaving them exposed for the public to see.  Able South Korea's counsel contacted Mr. Lee, yet again, and demanded the return of privileged materials, as well as the return of documents containing Mr. Lim's bank account information, which also were filed on the docket. *See* Latzer Decl. ¶ 15, Ex. 6.  Mr. Lee agreed to remove the banking information but left the privileged material untouched for the public to view.  Mr. Lee had ample opportunity to right a wrong, or at least seek Court intervention.  When given the choice, several times, he chose to ignore his professional responsibilities.

Mr. Lee's primary argument is that RPC 4.4(b) only applies to circumstances involving inadvertent disclosures, meaning when an adversary inadvertently discloses privileged information. *See generally* ECF No. 83. That view is so meritless that it hardly warrants much discussion. Mr. Lee provides no authority for such a narrow reading of RPC 4.4(b). The plain reading of the RPC 4.4(b) is clear that it applies not just when privileged information is "inadvertently sent," but also when a lawyer "receives" information that was "wrongfully obtained." The Court's decision in *Maldonado* is instructive. In that case, the individual plaintiff provided his attorneys with privileged information belonging to the defendant. *Maldonado*, 225 F.R.D. at 125. Plaintiff's attorneys were disqualified under the framework of RPC 4.4(b) for reasons explained below. *Maldonado*, 225 F.R.D. at 140. Moreover, the spirit of the RPC, as stated in RPC 8.4(d), makes it irrelevant whether privileged documents were produced in discovery inadvertently by an adversary or whether the attorney's own client obtained it unlawfully. "[A]n attorney may not do indirectly that which is prohibited directly . . . and consequently the lawyer cannot be involved in the subsequent review of evidence obtained improperly by the client." *Maldonado*, 225 F.R.D. at 138 (citing the New Jersey Supreme Court Advisory Comm. on Pro. Ethics Op. 680, 139 N.J. L.J. 240 (Jan. 16, 1995)). Once Mr. Lee was on notice that Able South Korea was claiming that the documents at issue were privileged, he had a duty to return the documents and preserve his rights to challenge Able South Korea's assertion at a later stage. *See Stengart*, 990 A.2d at 655 ("By reading e-mails that were at least ***arguably privileged*** and failing to notify [plaintiff] promptly

19

about them, [defendant]'s counsel breached RPC 4.4(b).") (emphasis added).  Mr. Lee's repeated refusal to return privileged documents and his proactive actions of publishing those same documents on two public dockets despite being warned of their privileged nature shows utter disregard for his ethical obligations.  Therefore, the Court concludes that Mr. Lee violated RPC 4.4(b) and RPC 8.4(d).

### D. <u>Disqualification</u>

Because Mr. Lee violated the RPC, the Court must weigh the factors outlined in *Maldonado* to determine whether he should be disqualified from this case.[5]  The first factor–whether Mr. Lee knew or should have known that the material was privileged–favors disqualification. *See Maldonado*, 225 F.R.D. at 139.  The Privileged Documents are clearly privileged in nature, and as discussed above, there was no reasonable basis for Mr. Lee to assert that Plaintiff was the owner of that privilege. Given the nature of the documents and the circumstances under which Plaintiff received them, Mr. Lee should have known that they were at least potentially privileged, a privilege held by the corporation, not Plaintiff in his individual capacity. This was evident as early as March 27, 2024, when Able South Korea asserted that Mr. Lim "served as [Able South Korea's] ***corporate counsel*** and indeed Plaintiff acknowledged as much in the joint status letter. . . . Mr. Lim has confirmed to us[] that Mr. Lim did ***not*** represent Plaintiff individually."  ECF No. 33 at 1 (emphasis in

---

[5] Plaintiff does not address any of the *Maldonado* factors in his opposition to the Motion. *See generally* ECF No. 83.  Therefore, the analysis of the *Maldonado* factors only considers the arguments raised in Able South Korea's moving papers.

original).  Given this representation, it defies logic to assume that Able South Korea would not assert privilege over communications between Plaintiff and Mr. Lim.

As if that was not enough notice to Mr. Lee, Able South Korea expressly asserted the attorney-client privilege over the documents at Mr. Lim's deposition in May 2024, establishing the point in time Mr. Lee affirmatively knew of the potential privilege concerning the specific documents, and making his possession and continued reliance on those documents inappropriate under RPC 4.4(b) and RPC 8.4(d).  After the deposition on May 19, 2024, Able South Korea emailed Mr. Lee, once again, asserting privilege over the Privileged Documents, advising Mr. Lee of his ethical obligations under RPC 4.4(b), and demanding the return of all documents containing Able South Korea's privileged attorney-client communications and/or work product.  Latzer Decl. Ex. 4.  Mr. Lee was clearly aware of the privilege claim, yet he refused to comply with RPC 4.4(b).  *Id.* ¶ 12.  The first *Maldonado* factor favors disqualification given that Mr. Lee unequivocally knew that the documents in dispute were at least potentially privileged.

The second factor–the promptness with which Mr. Lee notified the opposing side that he received its privileged information–also weighs in favor of disqualification.  *See Maldonado*, 225 F.R.D. at 139-40.  The court in *Maldonado* found this factor weighed in favor of disqualification where offending counsel never notified their adversary of their possession of privileged materials and made no attempt to return the materials, even refusing to return the documents after the adversary demanded their return.  *See id.*  Those circumstances are similar here.

Like the offending counsel in *Maldonado*, Mr. Lee never notified Able South Korea of his possession of the Privileged Documents. Able South Korea only became privy to Mr. Lee's and Plaintiff's possession of the documents at Mr. Lim's deposition. Plaintiff also refused to return any of the Privileged Documents after Able South Korea asserted privilege at Mr. Lim's deposition and demanded their return. The striking similarity between the *Maldonado* case and this one places the second factor in favor of disqualification.

The third factor–the extent to which Mr. Lee reviewed and digested the privileged information–again favors disqualification. *See id.* at 140. There is no doubt that Mr. Lee reviewed and digested the Privileged Documents. These documents provided the foundation for Mr. Lee's attempts to disqualify Able South Korea's counsel. *See generally* ECF Nos. 31-34, 55-60. As explained further in connection with the fourth factor, the docket is rife with examples of Mr. Lee advancing his client's interest in reliance on the Privileged Documents, making clear that Mr. Lee heavily considered the information contained in them.

The fourth factor–the significance of the privileged information–also favors disqualification. *See Maldonado*, 225 F.R.D. at 140. For this factor, the Court must consider the extent to which Plaintiff's possession of the Privileged Documents will prejudice Able South Korea's defenses, as well as to what extent a return of the documents will mitigate prejudice. *See id.* The Court does not know what other potentially privileged documents are in Mr. Lee's and Plaintiff's possession, but the documents that the Court has reviewed are sufficient to conclude that they contain

privileged material related to issues in this case.  Mr. Lee concedes the importance of these documents by arguing that "[u]nder Able [South] Korea's rationale, 'privileged and confidential documents' conceivably would include any and all proof of Chang's claims against Able [South] Korea . . . ."  ECF No. 83 at 7.  Indeed, Mr. Lee has previously admitted to their importance when responding to Able South Korea's letters first raising the privilege dispute.  *See* ECF Nos. 55-60.  Mr. Lee stated,

> Plaintiff brought his claims based on documents and materials available to him and otherwise in accordance with Rule 11. Naturally, these documents and materials derive from Plaintiff's employer-employee relationship, along with Plaintiff's relationship with Mr. Joshua Lim, Esq., whom the former reasonably believed to be his attorney. Whether or not he disagrees with Plaintiff's interpretation of his exclusive relationship with Mr. Lim, [counsel for Able South Korea] simply cannot cast a "privilege" net over all, or almost all of Plaintiff's documents and materials, demand Plaintiff to "return" same, and control or preclude Plaintiff's use of same to prosecute his claims.

ECF No. 59 at 1.  This is nothing short of a concession that the Privileged Documents are significant to this case.  The Privileged Documents may serve as a blueprint "to merits of Plaintiff's case, as well as Defendant['s] defenses, therefore, its significance cannot be overstated."  *Maldonado*, 225 F.R.D. at 140 (concluding that there was "substantial prejudice to Defendants," and that "[t]he bell cannot be unrung here; hence, return of the documents will not mitigate the prejudice.").  Like in *Maldonado*, returning the documents here is not an adequate substitution remedy for disqualification given Mr. Lee's extensive familiarity with the documents.  That bell cannot be unrung.  The fourth *Maldonado* factor weighs in favor of disqualification.

The fifth factor–the extent to which Able South Korea is at fault for the disclosure–also favors disqualification.  *See id.* at 140-41.  There is no evidence that

Plaintiff's possession of the documents at issue was a result of Able South Korea's mistake. *See id.* In fact, Able South Korea required Plaintiff to sign a confidentiality agreement that prohibited Plaintiff from "us[ing] or disclos[ing] any Confidential Information without the prior written consent of the Company both during the term of his employment and following termination thereof," and required that he "return[] [a]ll property belonging to the Company []including . . . all documents, records, notebooks, [and] files[.]" ECF No. 82-1 at 6 n.2 (internal quotations omitted); Latzer Decl. Ex. 1 ¶¶ 2, 9, ECF No. 82-2 at 9-14. Not only does Plaintiff affirmatively recognize that Able South Korea was not at fault for the disclosure of the documents, *see* ECF No. 83 at 1, 6-7, but the confidentiality agreement shows that Able South Korea tried to protect itself from Plaintiff obtaining and disclosing confidential information. This factor, too, weighs in favor of disqualification.

Finally, the sixth factor–the extent to which the non-movant will suffer prejudice as a result of disqualification–while slightly disfavoring disqualification, does not outweigh the remaining factors. *See Maldonado*, 225 F.R.D. at 141. Although disqualification would deprive Plaintiff of the counsel of his choice, nothing before the Court suggests that Plaintiff is incapable of seeking new counsel. Mr. Lee's conduct as it relates to these Privileged Documents "strains the limits of ethical conduct." *See id.* Therefore, Plaintiff's choice of counsel must "yield to the preservation of a fair and just litigation process." *Id.*

Moreover, any prejudice Plaintiff may face does not outweigh the significant prejudice Able South Korea faces from Mr. Lee's continued participation in this

litigation. Mr. Lee's conduct in this case, alone, calls into question his ability to abide by his ethical obligations. But this case is not the first time a court has had to sanction Mr. Lee for egregious misconduct, including for breaking an obvious golden rule—thou shall not lie to a court. In one case, the United States District Court for the Southern District of New York sanctioned Mr. Lee for making false representations to the court and imposed a $192,319.34 fine to be paid by him personally. *See Hong v. Mommy's Jamaican Market Corp.*, No. 20-cv-9612, 2024 WL 3824394, at \*7, \*20 (S.D.N.Y. Aug. 14, 2024). In sanctioning him, the court found that "Mr. Lee engaged in a ***strategy of deception***" and "that a fraud has been perpetrated on the Court and Mr. Lee has unreasonably and vexatiously prolonged the proceedings." *Id.* (emphasis added). Similarly, in the State Court Action, the court fined Mr. Lee $12,500.00 for filing frivolous counterclaims. *See* Latzer Decl. ¶ 13, Ex. 5 at 1-2, ECF No. 82-2 at 106-31. The judge in the State Court Action noted that "[t]he problem with [Mr. Lee's] pleading is that it claimed a cause of action for which there is no legal basis, and none was articulated in response to either the motion to dismiss or this motion for fees." Latzer Decl. Ex. 5 at 16. The two prior sanctions against Mr. Lee are not the basis for this Court's decision. But his conduct in other courts, and his continued conduct in this Court, seriously undermines the Court's trust in Mr. Lee's candor and ability to follow even basic RPCs.

After considering the factors, and balancing "the need to maintain the highest standards of the [legal] profession" against Plaintiff's "right to freely choose his counsel," *Steel*, 912 F. Supp. at 733, the Court finds that that Mr. Lee's use and

continued possession of the Privileged Documents is a flagrant violation of RPC 4.4(b) and RPC 8.4(d) that warrants disqualification.    Therefore, Mr. Lee shall be disqualified from this case.

**E. Expedited Discovery and Other Sanctions**

Finally, the Court must address Able South Korea's application for expedited discovery and sanctions.  Able South Korea requests that Mr. Lee and Plaintiff return and permanently delete Able South Korea's privileged and confidential documents from all their electronic devices and submit a declaration confirming that they have done so.  ECF No. 82-1 at 31.  Able South Korea also seeks other expedited discovery to determine the extent of Mr. Lee's and Plaintiff's possession of other privileged documents and whether they shared these documents with others.  *See id.* at 26-28. Specifically, Able South Korea seeks a full forensic review of Plaintiff's electronic devices and asks that the Court direct Plaintiff and Mr. Lee to sit for depositions.  *Id.* at 28.  Able South Korea emphasizes that it is "not . . . sufficient for [Plaintiff] and Mr. Lee to simply represent . . . that they have, in fact, turned over all privileged and confidential documents," thus requiring the expedited recovery.  *Id.*

A forensic review of Plaintiff's and Mr. Lee's electronic devices would run the risk of revealing privileged documents between them to which Able South Korea is not entitled.  The Court will not order such a review at this time.  However, the Court shares Able South Korea's concerns regarding Mr. Lee's candor, especially when Mr. Lee has shown a propensity for making false representations to another court.

26

Indeed, the court in *Hong* admonished Mr. Lee for his false representations, summarizing them as follows:

> Mr. Lee engaged in a strategy of deception.  He presented a false story regarding the NYSDOL that entirely omitted the fact that the Defendants, through their daughter, had agreed on a strategy to default and challenge only damages.  When he was caught in that lie and Plaintiff moved to reinstate the default judgment, Mr. Lee did not admit to the truth.  He withheld the engagement letter and misrepresented the date on which he was first contacted by a representative of Defendants and the purpose and content of that contact.

*Hong*, 2024 WL 3824394, at *7.

Therefore, the Court will grant Able South Korea's request with some limitations:

(1) To the extent they have not done so, Mr. Lee and Plaintiff shall produce and delete all documents and communications between Plaintiff and Mr. Lim and/or anyone at Mr. Lim's firm. Plaintiff need not produce privileged communications exchanged between himself and Mr. Lee; however, if Plaintiff is claiming privilege, Plaintiff shall produce a privilege log.

(2) To the extent they have not done so, Mr. Lee and Plaintiff shall produce all documents and communications Plaintiff received in his capacity as co-CEO of Able USA.  If the parties do not agree on whether those documents are otherwise discoverable, the parties may raise the issue with the Court.

(3) Mr. Lee and Plaintiff shall each file a declaration, executed under penalty of perjury, confirming that Mr. Lee and Plaintiff have complied with the two preceding paragraphs.

(4) Mr. Lee and Plaintiff shall sit for depositions to allow Able South Korea the opportunity to inquire about the steps Plaintiff and Mr. Lee took to search, return, and purge all confidential and privileged materials inappropriately in their possession.

(5) Finally, if Plaintiff hires a new attorney, within sixty (60) days of being retained, new counsel shall conduct due diligence and certify that Plaintiff has complied with the conditions set forth above.

The foregoing remedies should assuage any concern over Mr. Lee's and Plaintiff's continued possession of Able South Korea's privileged and confidential information.

Turning next to other sanctions, Able South Korea seeks attorney's fees incurred in connection with this Motion. *See* ECF No. 82-1 at 28-30. Courts have "inherent authority to impose sanctions upon those who would abuse the judicial process." *See Republic of the Philippines v. Westinghouse Elec.*, 43 F.3d 65, 73 (3d Cir. 1994) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)). These powers include investigating whether a fraud has been committed upon the court and assessing attorney's fees when a party has acted in bad faith. *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006). Courts in the Third Circuit must ensure there is "an adequate factual predicate for flexing its substantial muscle under its inherent

powers, and must also ensure that the sanction imposed is tailored to address the harm identified." *Id.* at 100 (internal quotations omitted).

Disqualification alone is a severe sanction, but Mr. Lee's misconduct is clear evidence of bad faith and establishes more than an adequate factual predicate for requiring Mr. Lee to pay Able South Korea's attorney's fees in connection with the instant Motion.  Mr. Lee was given ample opportunity to correct his actions.  First, Able South Korea articulated that Mr. Lim was Able South Korea's outside general counsel in March 2024, putting Mr. Lee on notice that Mr. Lim represented the corporation, not Plaintiff in his individual capacity.  *See* ECF No. 33.  Then, again, Able South Korea asserted its privilege claim at Mr. Lim's deposition in May 2024, making it unequivocal that the documents at issue were at minimum potentially privileged.  *See* Lim Dep. Tr. 44:10–48:6.  And finally, after Mr. Lim's deposition, Able South Korea repeated its view concerning the privileged nature of the documents via email.  *See* Latzer Decl. ¶¶ 11-12, Ex. 4.

At every turn, Mr. Lee had an opportunity to course correct.  But instead, Mr. Lee refused to abide by RPC 4.4(b)'s directive to cease, notify, and return the Privileged Documents and proceeded to file them on ***two public dockets***.  Mr. Lee's conduct is inexcusable.  There was never any merit to Mr. Lee's and Plaintiff's position that the privilege belonged to Plaintiff.  Mr. Lee was obligated to return the Privileged Documents upon Able South Korea's privilege assertion.  *See* N.J. R.P.C. 4.4(b); Fed. R. Civ. P. 26(b)(5) ("After being notified [of a privilege claim], a party must promptly return, sequester, or destroy the specified information and any copies it has;

29

must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.").

Plaintiff's role in facilitating Mr. Lee's misconduct is unclear. He certainly obtained the documents that sparked the current motion, erroneously believing that Mr. Lim represented him in his individual capacity. Although the Court casts doubt over the reasonableness of Plaintiff's belief, the Court will not require Plaintiff to pay legal fees to Able South Korea because the full blame for the costs associated with this Motion lies with Mr. Lee. Mr. Lee, as a licensed attorney, is solely responsible for abiding by his ethical obligations under the RPC. Once Mr. Lee was on notice that Able South Korea was claiming privilege over the documents, it was his responsibility, not Plaintiff's, to abide by the RPC and obviate the need for Able South Korea to file this Motion.

Disqualification, along with Able South Korea's attorney's fees, are sanctions "tailored to address the harm[s]" identified by Able South Korea. *Wachtel*, 239 F.R.D. at 100. Mr. Lee's continued participation in this case, after wrongfully possessing and relying on Able South Korea's Privileged Documents, is highly prejudicial to Able South Korea. And had it not been for Mr. Lee's misconduct in connection with the Privileged Documents, Able South Korea never would have incurred the costs related to the instant Motion. Therefore, Mr. Lee, but not Plaintiff, is ordered to pay Able South Korea's attorney's fees and expenses in connection with the instant Motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Able South Korea's Motion (ECF No. 82) is

**GRANTED**.

_____

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: April 17, 2025