<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEHOON CHANG, *Plaintiff*, v. ABLE C&C CO. LTD., *Defendant*. | Civil No.: 23-cv-2590 (KSH) (JRA) <br><br> <u>**OPINION**</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.      Introduction**

Magistrate Judge Jose R. Almonte issued a 31 page opinion that disqualified plaintiff's attorney, Peter Y. Lee, and ordered monetary and non-monetary sanctions against him. In a filing (D.E. 129) that Lee incorrectly denominated a reconsideration but is substantively an appeal to this Court from Judge Almonte's decision, Lee argues that the record does not support the finding that he acted in bad faith in retaining and docketing defendant Able South Korea's privileged documents. Lee seeks relief not from the disqualification, but from the sanctions. For the reasons set forth below, his appeal is denied.

**II.     Background & Procedural History**

Judge Almonte's April 17, 2025 opinion (D.E. 117) fully sets forth the factual and procedural background of this case. Briefly, in 2020, Able South Korea hired Chang to serve its "co-director for its United States operations," in other words, its co-CEO. (D.E. 73, Am. Compl. ¶ 13.) Chang worked for Able USA, a subsidiary of Able South Korea. (*See id.* ¶ 12.) Three years later, he was fired. (*Id.* ¶¶ 18, 23.) He has sued Able South Korea in this Court, claiming his firing was unlawful. (*Id.* ¶¶ 18-24, 31-37.)

1

Early on, through Lee, Chang moved to disqualify Cole Schotz P.C., the law firm representing Able South Korea, claiming it had a conflict of interest. (D.E. 31, 32.) He alleged that Able South Korea's outside general counsel, Joshua Lim, divulged information about the case to Cole Schotz while representing Chang in his personal capacity. (D.E. 32.) Able South Korea opposed, claiming Lim served as the company's outside general counsel and never represented Chang individually. (D.E. 33.) Judge Almonte ordered Lim to be deposed. (D.E. 42.)

During Lim's deposition, Able South Korea learned that Chang had kept various privileged and confidential documents after his firing without authorization, and had shared them with his lawyer Lee. (D.E. 117, Op., at 3; *see* D.E. 82-2, Declaration of Eric S. Latzer ("Latzer Decl.") ¶¶ 8-9.) Three of those documents are now at issue. (*See* D.E. 55, May 23, 2024 Letter from Lee.) First, there is Exhibit JL-2, an April 2020 email chain between Lim and Chang relating to Lim's scope of work (including the legal topics Lim would advise on), fees, and negotiation of a retainer agreement. (D.E. 55-2, May 23, 2024 Letter from Lee, at 1-8.) Second, there is Exhibit JL-5, an email from Lim and another member of his firm attaching a legal memorandum related to "recall procedures and requirements" relevant to Able South Korea's skincare products. (D.E. 55-4, May 23, 2024 Letter from Lee, at 1.) Third is the legal memorandum itself. (D.E. 128-1.)

When Lee introduced the first of these documents during Lim's deposition, Able South Korea's attorney Eric Latzer immediately asserted privilege. (D.E. 82-2 Latzer Decl. & Ex. 3, Lim Dep. Tr., at 27:15-46:16.)

> Hold on a second, Peter, because a couple of things. First of all, this is a document that if you intend to introduce it should have been produced before the deposition. This is the first time I'm seeing it. Second of all, to the extent that Mr. Chang communicated with Mr. Lim regarding Able US matters, those matters

2

are privileged and that privilege belongs to Able USA.  And as I said before, Able USA is not waiving the privilege.

(*Id.* at 33:10-22.)

Lee argued back that Exhibit JL-2 "does not identify all recipients" so if a non-client got it, "there will be no privilege attaching to this particular communication." (*Id.* at 38:10-14.)

Latzer disagreed:

> This is an email chain that you've produced for the first time.  Apparently you produced it not in its native format and in such a form that we can't tell within the chain who's communicating with whom.  However, the response at the top of the first page of JL-2 shows that, at least on this first page the communication is between Mr. Chang in his capacity as Able US's co-CEO and Mr. Lim.  So I'm not sure what you're talking about when you're suggesting that there may be other people who are parties to this communication.  There aren't.  And again, the discussion here is about Able US and business pertaining to Able US, and that is why the privilege attaches to it.

(*Id.* at 38:20-39:8.)

After Lee's introduction of JL-5, came this objection:

> Hold on.  We object to the introduction of this document.  This is privileged, privileged and confidential.  And I'm going to be clear again on this, Peter, the law in New Jersey is very clear that when a corporation holds a privilege, the privilege passes along with new management.  So the fact that at one time your client may have been the co-CEO of the company does not mean that he currently holds Able US's privilege.  So to the extent that he has privileged and confidential information, he is not to disclose it and you cannot introduce it in this deposition.
>
> LEE:  Introducing something in a deposition is entirely different from introducing it as evidence in a trial.
>
> LATZER:  It's not.
>
> LEE:  I beg to differ.  So we agree to disagree on that.  If you want to get the judge on the phone, let's get the judge on the phone, but in the meantime I would like to get through this given the two-hour constraint.  Okay?
>
> LATZER:  Peter, this is a privileged --
>
> KWAK:  The fact that you have this in the first place is an issue.

3

LATZER:  Hold on one second, Sean.  This is a privileged communication.  I think you're in agreement with us.  You seem to be saying that it's okay for you to introduce and ask questions about it at a deposition.  We disagree.

. . . .

LEE:  This helps put things in context and move things along.

LATZER:  That's irrelevant to me.  It's a privileged and confidential communication.

LEE:  But I'm not going to ask substantive information.  Obviously, I didn't produce the actual document that attaches to this email.

LATZER:  It doesn't matter to me.  It's privileged and confidential.

. . . .

LEE:  I'm only going to ask him for a yes or a no.  Okay?

LATZER:  That doesn't matter either.

LEE:  But nevertheless, you can't block me --

LATZER:  I can.

LEE:  -- from asking questions.  What you can do is preserve your objection--

LATZER:  No.

LEE:  Hang on.  Stop shaking your head. Let me finish. Okay?  If we want to revisit it later, fine, we can tell him not to answer and we can note it with the time and then revisit it later in front of the judge.  But what I'm trying to say is let me establish a record.  Please let me do that and then later, and you can establish your objection on the record and then we'll put a timestamp on it, and then later before Judge Almonte we can bring it up.

LATZER:  I am establishing an objection to the introduction of this document because it's privileged and confidential.  That's what I'm doing.

LEE:  Okay. So Mr. Latzer refuses or wants -- does not want JL-5 to see the light of day.  Is that what you're saying?

LATZER:  That's how it works.

LEE:  Okay.

4

(*Id.* at 44:3-48:6.)

The next day, Lee filed the email chain between Chang and Lim (Exhibit JL-2) on the public docket in a related action pending in state court. (D.E. 82-2, Latzer Decl. ¶ 10.) On May 19, Able South Korea sent a demand for the privileged documents to be returned; that email went unanswered. (*Id.* ¶¶ 11-12 & Ex. 4.) On May 23, Lee filed a letter on the public docket in this case (D.E. 55) and attached five documents as unsealed exhibits, including Exhibits JL-2 (which contained bank account information) and JL-5. (D.E. 82-2, Latzer Decl. ¶ 14.) That same day, Latzer emailed Lee demanding he take down the documents. (*Id.* ¶ 15 & Ex. 6.) Lee agreed only as to the bank account information. (*Id.* ¶¶ 16-17 & Ex. 6.) Able South Korea filed a motion to seal D.E. 55, which Judge Almonte granted on the basis that the documents contained confidential, attorney-client privileged communications. (D.E. 74, 78.)

At that point, Able South Korea moved to disqualify Lee. (D.E. 82.) During oral argument before Judge Almonte on the issue, Lee argued for the first time that Able South Korea did not have standing to assert privilege because Lim's retainer agreements listed only Able USA as the client. (D.E. 106, Dec. 17, 2024 Tr., at 20:2-23:10; *see* D.E. 117, Op., at 6.) After further briefing (D.E. 99, 105, 107), Judge Almonte issued his decision disqualifying and sanctioning Lee. (D.E. 117, 118.)

Judge Almonte found Able South Korea and Able USA were "joint-clients" of the same general counsel, so Able South Korea had standing. (D.E. 117, Op., at 10-13 (citing *Margulis v. Hertz Corp.*, 2017 WL 772336, at *6 (D.N.J. Feb. 28, 2017) (Falk, J.) (addressing "joint-client" privilege).) Next, he found that the documents in question contained legal advice and were exchanged between Chang as co-CEO of Able USA and Lim as outside counsel for Able South Korea and Able USA. (*Id.* at 12-16.) Judge Almonte noted that "[i]t strains credulity that Mr.

5

Lee, an attorney, could have reasonably believed that [Chang] rightfully held the privilege" since "[i]t is well-settled that management for corporations holds the authority to assert and waive the corporation's attorney-client privilege." (*Id.* at 15 (citation omitted).)

Judge Almonte walked through Lee's obligations under the New Jersey Rules of Professional Conduct (RPC 4.4(b) and 8.4(d)) and Federal Rules of Civil Procedure (FRCP 26(b)(5)) and determined that Lee blatantly violated them. (*Id.* at 17-20.) He determined Lee was "on notice" that Able South Korea was asserting privilege and his "repeated refusal to return privileged documents and his proactive actions of publishing those same documents on two public dockets despite being warned of their privileged nature shows utter disregard for his ethical obligations." (*Id.* at 19-20.) Judge Almonte held that Lee's conduct in this case—which included ignoring Able South Korea's demands to return the privileged documents—constituted bad faith. (*Id.* at 29-30.)

Finally, Judge Almonte determined sanctions were appropriate. (*Id.* at 26-30.) He ordered expedited discovery, including the production of all documents that Chang received in his capacity as co-CEO of Able USA, and ordered both Chang and Lee to "sit for depositions to allow Able South Korea the opportunity to inquire about the steps [Chang] and Mr. Lee took to search, return, and purge all confidential and privileged materials inappropriately in their possession." (*Id.* at 27-28.) He denied Able South Korea's request for a full forensic review of Chang's electronic devices because this would "run the risk of revealing privileged documents . . . to which Able South Korea is not entitled." (*Id.* at 26.)

Judge Almonte also found that "Lee's misconduct is clear evidence of bad faith and establishes more than an adequate factual predicate for requiring Mr. Lee to pay Able South Korea's attorney's fees in connection with the instant Motion." (*Id.* at 29.) He emphasized:

6

> At every turn, Mr. Lee had an opportunity to course correct. But instead, Mr. Lee refused to abide by RPC 4.4(b)'s directive to cease, notify, and return the Privileged Documents and proceeded to file them on **two public dockets**. Mr. Lee's conduct is inexcusable. There was never any merit to Mr. Lee's and [Chang's] position that the privilege belonged to [Chang]. Mr. Lee was obligated to return the Privileged Documents upon Able South Korea's privilege assertion.
>
> (*Id.* (citing N.J. R.P.C. 4.4(b); Fed. R. Civ. P. 26(b)(5)).)

### III.  Standard of Review

A district court may "reconsider" the magistrate judge's decision only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

"A ruling is clearly erroneous where, although there is evidence to support it, the district court upon review of the entire evidence is left with the 'definite and firm conviction that a mistake has been committed.'" *Washington v. Ellis*, 2022 WL 3226630, at *1 (D.N.J. July 20, 2022) (Sheridan, J.) (quoting *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 245 (D.N.J. 1998) (Lifland, J.)). Under this standard, the court must "accept the factual determination of the fact finder unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *In re Abbott Labs.*, 96 F.4th 371, 383 n.12 (3d Cir. 2024) (quoting *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)). "A ruling is 'contrary to law' when the magistrate judge has misinterpreted or misapplied the applicable law." *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 236 (D.N.J. 2022) (O'Hearn, J.) (quoting *Romero v. Ahsan*, 2015 WL 5455838, at *3 (D.N.J. Sept. 16, 2015) (Wolfson, J.)).

The burden of showing a ruling is clearly erroneous or contrary to law rests with the appellant. *Sabinsa Corp. v. HerbaKraft, Inc.*, 2020 WL 1503061, at *3 (D.N.J. Mar. 30, 2020) (Kugler, J.). "Unless that burden is met, the magistrate judge's findings should not be rejected

7

even if the district court could have decided the matter differently." *Allen*, 340 F.R.D. at 237 (quoting *Evans v. Emp. Ben. Plan*, 2007 WL 77325, at *1 (D.N.J. Jan. 8, 2007) (Bumb, J.)).

## IV. Discussion

Lee argues that Judge Almonte's order of sanctions is clearly erroneous or contrary to law because (1) the record does not support any "bad faith"; (2) the sanctions are punitive and not proportional to the harm alleged; and (3) they are based on unrelated cases in which Lee was disciplined. (D.E. 129-2, Appeal, at 12-15.)

Courts possess inherent authority to impose sanctions where an attorney has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," or where an attorney's conduct has "abuse[d] the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (citation omitted). In such cases, sanctions may be assessed "against the responsible party." *Id.* at 46. "If an attorney, rather than a client, is at fault, the sanction should ordinarily target the culpable attorney." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

Yet "[b]ecause of their very potency, inherent powers must be exercised with restraint and caution." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188-89 (3d Cir. 2002). Thus, a court must ensure that there is "an adequate factual predicate" for sanctions and that "the sanction is tailored to address the harm identified." *Republic of Philippines*, 43 F.3d at 74. It must also "specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate." *Id.* And when the sanctions sought are attorney's fees and costs, a finding of bad faith is necessary. *Id.* at 74 n.11.

Lee does not cite to any controlling law that Judge Almonte misapplied in finding he acted in bad faith. (*See* D.E. 129-2, Appeal, at 10-16.) The Court therefore focuses on the

8

argument that Judge Almonte's findings were clearly erroneous. Lee argues that he "had a reasonable basis to disagree with or reject" Able South Korea's privilege claim since he was uncertain if Able South Korea had standing to assert privilege or who held the privilege. (*Id.* at 12.) He also submits that Able South Korea was not prejudiced by his conduct since the documents related to Able USA, and in any event were insignificant. (*Id.* at 11-13.) Further, Lee justifies that "[a]t any rate, [Chang] and Mr. Lee eventually agreed to observe Defendant's 'privilege' claim" once Judge Almonte sealed the documents. (*Id.* at 13.)

These arguments miss what the rules require. In full, New Jersey RPC 4.4(b) provides:

A lawyer who receives a document or electronic information and has reasonable cause to believe that the document or information was inadvertently sent shall not read the document or information or, if he or she has begun to do so, shall stop reading it. The lawyer shall (1) promptly notify the sender (2) return the document to the sender and, if in electronic form, delete it and take reasonable measures to assure that the information is inaccessible.

A lawyer who receives a document or electronic information that ***contains privileged lawyer-client communications involving an adverse or third party*** and who has ***reasonable cause*** to believe that the document or information was wrongfully obtained ***shall not*** read the document or information or, if he or she has begun to do so, ***shall*** stop reading it. The lawyer ***shall*** (1) promptly notify the lawyer whose communications are contained in the document or information (2) return the document to the other lawyer and, if in electronic form, delete it and take reasonable measures to assure that the information is inaccessible. A lawyer who has been notified about a document containing lawyer-client communications has the obligation to preserve the document.

(emphases added).

And Rule 26(b)(5) of the Federal Rules of Civil Procedure similarly provides:

If information produced in discovery is ***subject to a claim of privilege*** . . . the party making the claim may notify any party that received the information of the claim and the basis for it. ***After being notified***, a party ***must*** promptly return, sequester, or destroy the specified information and any copies it has; ***must not*** use or disclose the information until the claim is resolved; ***must*** take reasonable steps to retrieve the information if the party disclosed it before being notified; and ***may promptly present the information to the court under seal for a determination of***

9

>*the claim*.  The producing party must preserve the information until the claim is resolved.

(emphases added).

Lee does not dispute (or acknowledge) that, on multiple occasions, Able South Korea gave him notice that it was asserting privilege over the documents at issue.  Able South Korea made it clear that they were "subject to a claim of privilege," Fed. R. Civ. P. 26(b)(5), and contained "privileged lawyer-client communications involving an adverse or third party," N.J. R.P.C. 4.4(b).  Indeed, the documents contained information from and to Able USA and Able South Korea's general counsel, specifically emails relating to Lim's scope of legal representation and legal advice with an attached legal memorandum.

Once such a privilege claim is made over documents in a lawyer's possession, he or she must stop reading them, notify opposing counsel, and return and delete any copies until the privilege claim is resolved by a court.  *See Maldonado v. N.J. ex rel. Admin. Off. of Cts.-Prob. Div.*, 225 F.R.D. 120, 138 (D.N.J. 2004) (Rodriguez, J.) (describing this "cease, notify, and return" requirement); *see Strategic Env't Partners, LLC v. Bucco*, 2014 WL 6065816, at *4 (D.N.J. Nov. 12, 2014) (Clark, J.) (noting that a court's inquiry "does not turn on whether the [documents are] actually privileged," but on whether a claim of privilege was made).  It should go without saying that a privilege claim is for a court to resolve, not an attorney himself.  *See* Fed. R. Civ. P. 26(b)(5) (providing that a party "may promptly present the information to the court under seal for a determination of the claim"); *Maldonado*, 225 F.R.D. at 138 (providing that once becoming aware of the privileged nature of the material, an attorney "should either notify opposing counsel, and follow such counsel's instructions regarding the disposition of the material, or should completely refrain from using the materials until a court makes a

10

determination as to their proper disposition" (quoting ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94-382 (1994))).

In determining bad faith, Judge Almonte found that (1) Lee knowingly disregarded Able South Korea's privilege assertion and demand for the documents; (2) unilaterally declared that the documents were not privileged; and (3) proceeded to file them unsealed on two separate public platforms.  (D.E. 117, Op., at 29-30.)  Ignoring Able South Korea's privilege claims and multiple demands for return of the privileged documents is a direct violation of the rules and constitutes professional misconduct.  *See* N.J. R.P.C. 8.4 (providing "it is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct" or to "engage in conduct that is prejudicial to the administration of justice").

The argument that Lee was entirely justified in his actions is a gross misunderstanding of his ethical and professional obligations at best and an open and continuous disregard of them at worst.[1]  Lee asserts that it was unclear whether Able South Korea could assert privilege over its subsidiary's documents, so Judge Almonte's finding of bad faith is erroneous because it was reasonable for him to think the documents may not be privileged.  (D.E. 129-2, Appeal, at 11-12; D.E. 142, Reply, at 7-8.)  But the Court finds, as Judge Almonte did, "[g]iven the nature of the documents and the circumstances under which [Chang] received them, Mr. Lee should have known that they were at least potentially privileged."  (D.E. 117, Op., at 20.)  Simply put, if Lee was so uncertain about the privileged nature of the documents—as he now claims—he had no right to post them on two public dockets before seeking Court intervention.

---

[1] Lee's moving brief suggests that he still does not grasp the "hard stop" in the rules.  (*See* D.E. 129-2, Appeal, at 12 (asserting that Lee had a reasonable basis to "disagree with or reject" Able South Korea's privilege claim); *id.* at 13 (asserting that Chang and Lee "eventually agreed to observe Defendant's 'privilege' claim").)

Further, Lee has not shown that the monetary and non-monetary sanctions imposed by Judge Almonte were clearly erroneous or contrary to law. Judge Almonte ordered him to pay the attorney's fees that Able South Korea incurred in connection with its motion to disqualify, finding they were "'tailored to address the harm[s]' identified by Able South Korea." (D.E. 117, Op., at 28-30 (quoting *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 100 (D.N.J. 2006) (Hochberg, J.)).) Judge Almonte declined to impose sanctions on Chang because his "role in facilitating Mr. Lee's misconduct [was] unclear" and "it was [Lee's] responsibility, not [Chang's], to abide by the RPC and obviate the need for Able South Korea to file this Motion." (*Id.* at 30.) In cabining the sanctions, and finding Lee alone blameworthy and sanctions appropriate based on his bad faith, Judge Almonte exercised his discretion carefully and conservatively. *See Republic of Philippines*, 43 F.3d at 74 (requiring a court to evaluate the conduct at issue, consider the range of permissible sanctions, and tailor and explain why it chooses a particular sanction over other alternatives).

As to the non-monetary sanctions, Judge Almonte ordered Chang and Lee to return and delete the privileged documents, to submit sworn declarations, and to sit for depositions regarding what steps they took to comply. (D.E. 117, Op., at 26-30.) He emphasized that these measures were necessary in light of "concerns regarding Mr. Lee's candor." (*Id.* at 26-28.) Judge Almonte put limits on how far the inquiry would go: he declined to order a full forensic review of Chang's electronic devices to avoid "the risk of revealing privileged documents . . . to which Able South Korea is not entitled." (*Id.* at 26.) Again, these sanctions are reasonable and tailored to the harm sought to be redressed.

Finally, the Court finds the argument that Judge Almonte deprived Lee of due process by referencing his sanctioned misconduct in front of other courts without "giv[ing] him an

12

opportunity to explain his position" is meritless. (D.E. 129-2, Appeal, at 16.) Due process requires notice and an opportunity to be heard before a person is deprived of their property. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Lee received just that—in his opposition to Able South Korea's motion to disqualify, he argued that he should not be disqualified from the case or sanctioned in any amount. (*See generally* D.E. 83, Opp.) Review of that brief also reveals that, in response to Able South Korea's mention of Lee's previous sanctions (D.E. 82-1, Mov. Br., at 5, 30), Lee explicitly argued that the sanctions imposed by the other courts were irrelevant to Judge Almonte's analysis (D.E. 83, Opp., at 1 & n.1), exactly the argument he now asserts he "had no opportunity" to make to Judge Almonte, however brief that argument was.[2] (D.E. 129-2, Appeal, at 16-17.)

Weakening Lee's argument further, Judge Almonte explicitly stated that "[t]he two prior sanctions against Mr. Lee are not the basis for this Court's decision." (D.E. 117, Op., at 25.) Rather, the other discipline infractions that Lee faced served to bolster Judge Almonte's view that Lee's misconduct in this Court is not an isolated incident. (*See id.*)

---

[2] Further, in his 10-page opposition brief, Lee argued that Judge Almonte deprived him of due process "and any meaningful opportunity to brief, let alone rebut Defendant's arguments" since Judge Almonte allowed Able South Korea to bring a formal motion to disqualify Lee and to file a reply to such motion, but Lee was not permitted to file a formal motion to disqualify Cole Schotz. (*Id.* at 10.) Lee now attempts to repackage a separate sweeping due process violation in front of this Court, when he had ample time and space to make his arguments in front of Judge Almonte. *See* L. Civ. R. 7.2(b) (providing that opposition briefs "shall not exceed 40 ordinary typed or printed pages").

**V.      Conclusion**

For the foregoing reasons, Lee's appeal is denied.  An appropriate order accompanies this opinion.


Dated: November 12, 2025                                              */s/ Katharine S. Hayden*
                                                                      Katharine S. Hayden, U.S.D.J.