UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEHOON CHANG, | Civil Action No. |
| Plaintiff, | 23-cv-02590 (KSH) (JRA) |
| v. | |
| | **OPINION** |
| ABLE C&C CO. LTD., | |
| Defendant. | |

**José R. Almonte, U.S.M.J.**

Plaintiff Sehoon Chang ("Chang") moves to stay this action (the "Motion"). Dkt. No. 151. The dispute in this Motion centers around a criminal investigation against Chang in South Korea. Chang argues that allowing the instant civil litigation to proceed while the criminal investigation is pending would unduly prejudice him and place him at a tactical disadvantage. Defendant Able C&C Co. Ltd. ("Able") opposes the Motion. Dkt. No 152. The Court has considered the parties' submissions and decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons set forth below, Chang's Motion is **DENIED**.

**I.    BACKGROUND**

Chang brings this action alleging (1) that Able violated the New Jersey Conscientious Employee Protection Act ("CEPA") by wrongfully terminating him as Co-CEO for engaging in protected whistleblower activities, and (2) that Able

wrongfully withheld Chang's exit bonus after terminating him.[1] *See* Amend. Compl. ¶¶ 1–5, Dkt. No. 73. Discovery, which started on December 21, 2023, has been arduous, marred by Chang's prior counsel's mismanagement of the discovery process, which eventually led to his disqualification on April 17, 2025. [2] *See* Dkt. Nos. 29, 117–18. Since then, Chang obtained new counsel on June 27, 2025, and the Court scheduled a status conference with the expectation that discovery would proceed expeditiously. *See* Dkt. Nos. 143–44.

However, on September 4, 2025, Chang moved to stay the entire case pending resolution of an ongoing criminal investigation in South Korea (the "Criminal Investigation").[3] *See generally* Dkt. No. 151-1. Able's criminal complaint alleges that Chang embezzled company property while serving as Co-CEO by receiving kickbacks from Jaesuk Ahn, Able's other Co-CEO. [4] Dkt. 152 at 4. In connection with the Criminal Investigation, Chang voluntarily appeared for an interview in April 2025. *Id.* at 5. During that interview, Chang testified that at the time he received the funds

---

[1] This Court previously dismissed Chang's claims for breach of contract and promissory estoppel. *See* Dkt. No. 53. Chang's Amended Complaint only asserts a retaliation claim under CEPA and a claim for breach of good faith and fair dealing. *See generally* Amend. Compl.

[2] Chang's prior counsel, Mr. Peter Lee, appealed the disqualification order only as to the sanctions imposed. *See* Dkt. No. 129. The Honorable Katharine S. Hayden, U.S.D.J., affirmed that order on November 12, 2025. Dkt. Nos. 153–54.

[3] Chang filed his original motion to stay on August 8, 2025, seeking a stay of discovery, but because Chang was seeking to stay the instant action in its entirety, the Court directed Chang to refile the motion as a motion to stay proceedings. *See* Dkt. Nos. 145, 150.

[4] Able's parent company, Able Korea, commenced the Criminal Investigation by filing a criminal complaint on or about November 7, 2024, at the Seoul Namdaemun Police Station through its Korean counsel, Woomyon Partners LLC. Dkt. 152-2 ¶ 2. It is also worth noting that Able also initiated a state civil action in the Superior Court of New Jersey, Law Division (the "State Court Action") on February 20, 2024, similarly related to Chang's receipt of illegal kickbacks and alleging that Chang breached his fiduciary duties and wrongfully engaged in competing businesses. Latzer Decl. ¶ 3, Ex. 1 ¶¶ 1–2, Dkt. No. 152-1.

2

from Ahn he was unaware that they constituted kickbacks and only later understood them as such, further stating that "everything was orchestrated by Mr. Ahn, and [Chang] merely followed instructions." *Id.* As of the time this Motion was filed, the Criminal Investigation was ongoing, and the police department handling the investigation had not formally decided to prosecute Chang. *Id.*; Dkt. No. 151-1 at 7.

In his Motion, Chang contends that Able's criminal complaint was filed in retaliation for his civil claims, and that Able intends to use allegations from the Criminal Investigation as defenses in this civil action. Dkt. No. 151-1 at 2–3. Indeed, Able's Answer to the Complaint in this case asserts multiple defenses alleging misconduct by Chang, including the doctrine of "unclean hands" and that Chang's own wrongdoing led to his termination. *See* Answer at 10–12, Dkt. No. 76. Therefore, Chang expects Able to argue that Chang was terminated not for whistleblowing but for allegedly embezzling company funds through kickbacks and for competing with the company—issues also relevant in the Criminal Investigation in South Korea. *See* Dkt. No. 151-1 at 3.

Able opposes the Motion on various grounds, chief among them are that: (1) a stay of proceedings is not warranted because Chang has not been indicted, or even charged, in connection with the Criminal Investigation, (2) the Criminal Investigation does not relate to Chang's claims in this case, and (3) an indefinite pause on the instant action would unduly prejudice Able. *See generally* Dkt. No. 152.

3

## II.    LEGAL STANDARD[5]

A stay of a civil proceeding is an "extraordinary remedy" and is generally disfavored. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010). However, a court has inherent discretion to stay a case if the interests of justice so require. *See United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). "A stay of a civil case where there are pending criminal proceedings is not constitutionally required, however, it may be warranted in certain circumstances." *Walsh*, 7 F. Supp. 2d at 526. "For example, courts have found stays appropriate where denial would impair a party's . . . privilege [under the Fifth Amendment to the U.S. Constitution], extend the limits of criminal discovery, expose the defense's legal theories, or otherwise prejudice the criminal case." *Frantatoro v. Grabato*, No. 23-53 (WJM) (MAH), 2023 WL 5605669, at *3 (D.N.J. Aug. 30, 2023). The factors to consider when determining whether to stay a civil case pending resolution of a criminal proceeding include:

> (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burden on defendants; (5) the interests of the court; and (6) the public interest.

*Walsh*, 7 F. Supp. 2d at 526–27.

---

[5] Although Chang's original motion was filed as a motion to "stay discovery," Chang relied on the correct standard to stay proceedings pending a related criminal proceeding. *See generally* Dkt. No. 145. Therefore, the Court will consider the arguments raised at Dkt. No. 145 in addition to the arguments raised in the Motion at Dkt. No. 151.

### III. DISCUSSION

**(1) The extent to which the issues in the Criminal Investigation and the instant civil case overlap**

The degree of overlap between the pending civil and criminal cases is generally considered "the most important issue at the threshold" in determining whether to stay a civil proceeding. *Id.* at 527 (quoting Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)); *Frantatoro*, 2023 WL 5605669, at *4. "A court is less likely to grant a stay if the issues in parallel civil and criminal proceedings do not completely overlap." *Cress v. City of Ventnor*, No. 08-1873 (NLH), 2009 WL 750193, at *2 (D.N.J. Mar. 18, 2009). Accordingly, this factor leans in favor of staying a case when both the civil and criminal actions stem from the same or interrelated events. *Frantatoro*, 2023 WL 5605669, at *4; *see also Simonson v. Formisano,* No. 2:20-CV-20480-WJM-MF, 2021 WL 2221328, at *6 (D.N.J. June 1, 2021) ("Findings and determinations made in the underlying criminal proceedings against Formisano will likely have important ramifications on the litigation of this case.").

Plaintiff asserts that the claims in the instant action and the Criminal Investigation are related because the Criminal Investigation alleges "the equivalent of [a] violation of the duty of good faith and fair dealing." Dkt. No. 151-1 at 2; Dkt No. 145-1 at 5. Plaintiff also argues that Able "will use some of the same defenses" in both the Criminal Investigation and this action. Dkt. No. 145 at 5. Able counters by arguing that the claims in the instant action are "entirely unrelated to the criminal investigation in South Korea," Dkt. No. 152 at 9, emphasizing that the Criminal

5

Investigation concerns the alleged kickbacks Chang's received from Ahn, whereas the instant action relates to Chang's purported whistleblowing activities that allegedly resulted in his termination and Chang's demand for an exit bonus. *Id.*

The extent and scope of the overlap between the Criminal Investigation and the instant action is unclear. The Criminal Investigation appears to be about Chang allegedly embezzling funds through kickbacks he received from his Co-CEO in his employment capacity at Able. *See* Dkt. No. 151-1 at 2; Dkt. No. 152 at 9. The instant action, in contrast, relates to Chang's allegations that Able wrongfully withheld his exit bonus and that Able wrongfully terminated him for being a whistleblower and raising concerns regarding alleged regulatory violations. *See* Amend. Compl. ¶¶ 1–5. Those are two very different sets of facts. The only potential overlap that Chang highlights between the Criminal Investigation and this case appears to stem from Able's affirmative defenses—asserted on June 20, 2024, before the Criminal Investigation began—including that "Able has discovered or may discover evidence of wrongdoing by Chang that would have led to termination or other adverse action had Able known of the wrongdoing at the time of [Chang]'s employment." Answer at 12.

It is possible that evidence obtained in the Criminal Investigation, and any subsequent criminal proceedings if commenced, could "have important ramifications on the litigation of this case." *Simonson*, 2021 WL 2221328, at *6; *cf. Strategic Env't Partners, LLC v. State of N.J. Dep't of Env't Prot.*, No. CV 12-3252, 2016 WL 3267285, at *3 (D.N.J. June 8, 2016) ("Therefore, the evidence necessary to establish that [the

6

plaintiff] incurred response costs is likely different than evidence that is relevant to the criminal proceedings. [The plaintiff] has not pointed to any evidence to the contrary."). But it is also possible that the instant action could proceed to a jury trial without ever mentioning the Criminal Investigation. Those are issues that can be addressed by motions *in limine*. To the extent that Able's affirmative defense hinges on the Criminal Investigation, the overlap does not seem so significant as to warrant a stay of the entire proceedings here, which, again, would be an extraordinary remedy. There is simply insufficient information at this stage to adequately assess the extent and scope of the overlap between the two cases. Therefore, this factor is neutral.

**(2)    The status of the criminal case**

Notwithstanding the importance of the first factor,

> [t]he strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.

*Walsh*, 7 F. Supp. 2d at 527 (quoting Pollack, *supra*, at 203). "On the other hand, because there is less risk of self-incrimination, and more uncertainty about the effect of a delay on the civil case, *pre* indictment requests for a stay are generally denied." *Id.* (emphasis in original). Indeed, other courts have found that "the extent to which application of the first factor supports a stay is undercut by the fact that no criminal indictments have yet been issued." *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 411 (S.D.N.Y. 2018). "Absent indictment, the scope and nature of the criminal investigation is unknown, leaving this Court

unable to determine the extent to which an indefinite criminal case will eventually overlap[] with a pending civil action." *Id.* (citation modified).

Such is the case here. Both parties acknowledge that the Criminal Investigation is currently just that—an investigation. *See* Dkt. No. 145-1 at 5; Dkt. No. 151-1 at 3; Dkt. No. 152 at 11. In fact, the South Korean authorities have already interviewed Chang but have not yet decided whether to file formal charges against him. *See* Dkt. No. 145-1 at 5; Dkt. No. 151-1 at 3. Without such formal charges, the Court cannot determine "the extent to which [the Criminal Investigation] will eventually overlap[]" with this action, *Rex*, 346 F. Supp. 3d at 411, and therefore, most importantly, the Court cannot determine whether there truly is a risk of self-incrimination. *See Walsh*, 7 F. Supp. 2d at 527. While the Court understands Chang's concerns, the risk of self-incrimination is, at this stage, speculative given that he may not face criminal charges. Moreover, the lack of indictment in the South Korean proceedings means that there is "more uncertainty about the effect of a delay," if the Court were to stay the instant action. *Id.* An uncertain delay is detrimental to quick resolution of this matter, which has been pending for over two years.

The fact that the Criminal Investigation is a foreign criminal proceeding, or that "there is no grand jury indictment procedure in South Korea," Dkt. No. 151-2 ¶ 4, does not change this conclusion. Other courts have denied requests to stay for pending criminal proceedings overseas that have not resulted in formal charges against the party seeking a stay. *See Rex*, 346 F. Supp. 3d at 411 (denying a motion to stay proceedings where a criminal investigation in Israel had not reached the

8

indictment stage); *cf. 800537 Ontario, Inc. v. World Imports U.S.A. Inc.*, 145 F. Supp. 2d 288, 291 (W.D.N.Y. 2001) (granting a motion to stay proceedings where two Canadian criminal trials were scheduled). Therefore, this factor weighs against a stay.

**(3) The non-movant's interest in proceeding expeditiously weighed against the prejudice to the non-movant caused by a delay.[6]**

Next, the Court focuses on the potential prejudice a stay may have on Able as the non-movant. *See Walsh*, 7 F. Supp. 2d at 528; *Strategic Env't Partners*, 2016 WL 3267285, at *5. Mere delay is not usually sufficient to establish prejudice. *See Walsh*, 7 F. Supp. 2d at 528; *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. CIV.A. 11-00785 CCCC, 2011 WL 5416058, at *4 (D.N.J. Nov. 4, 2011) ("The mere fact that additional time will pass does not establish prejudice . . . ."). Instead, the party opposing the stay must demonstrate a "unique injury such as fading memories, asset dissipation, or an attempt to gain an unfair advantage from the stay." *Colombo*, 2011 WL 5416058, at *4. However, indefinite stays are particularly disfavored, and, in the context of prejudice against the non-movant, lean against staying an action. *See Cress*, 2009 WL 750193, at *2 ("Unlike when an indictment has been returned, here there is less certainty that Lombardi's criminal trial will begin shortly. Thus, a stay would be indefinite, prejudicing Plaintiffs."); *cf. Frantatoro,* 2023 WL 5605669, at *5

---

[6] The *Walsh* Court used the word "plaintiff" instead of "non-movant" for the third factor. 7 F. Supp. 2d at 527. The *Walsh* test is most often applied in the context of a defendant seeking to stay a civil proceeding, and therefore, this factor more often looks at the prejudice against a plaintiff. However, as the court in *Strategic Env't Partners* recognized in the context of a plaintiff seeking a stay, "mechanically appl[ying] the factors based on the labels . . . would result in a test that was different than that contemplated by the *Walsh* court. . . . The clear import of *Walsh*, however, was to consider the non-moving party in analyzing the third factor." 2016 WL 3267285, at *3 n.2.

("[T]he stay will be for only a limited duration, as trial in the Criminal Case is scheduled . . . [t]hus, any resulting delay or prejudice would be minimal.")

Able correctly notes that "discovery [has] been at a standstill for many months, primarily because of the disqualification of [Mr. Peter Lee as Chang's attorney]," and asserts that the "pending litigation impacts Able['s] . . . day-to-day business." Dkt. No. 152 at 12. While the Court agrees with Chang that Able cannot "show any particularly unique injury," Dkt. No. 145-1 at 6, a stay here would be indefinite. The Criminal Investigation is ongoing and, as Able points out, "there is no indication of when Korean authorities will determine whether to file criminal charges against Chang." Dkt. No. 152 at 12. Imposing an indefinite stay would unduly prejudice Able's interests in resolving this matter against them. This case has already suffered from many delays and detours, and the parties are not only litigating this matter, but also the related State Court Action involving similar issues. There is no doubt that both actions, and now the related Criminal Investigation, have been taxing on both parties, and moving at least one of these actions toward resolution presents the least prejudicial outcome for all parties involved. Therefore, the Court finds that this factor leans against granting a stay.

**(4)    The private interests of and burden on Chang**

Next, the Court turns to whether denying a stay would impose an undue burden on Chang. Individuals who are the subject of a related criminal proceeding may be forced to "choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and probably losing the civil case." *Walsh*, 7 F. Supp. 2d at 528. However, requiring a party to

10

make that choice is not unconstitutional, and a court maintains discretion to stay the case in the interests of justice. *Id.*; *Colombo*, 2011 WL 5416058, at *5. Inherent to this analysis is the level of risk of self-incrimination. *See Frantatoro,* 2023 WL 5605669, at *6. As already explored in connection to the first and second *Walsh* factors, "the risk of self-incrimination is greatest when significant overlap exists between civil and criminal matters and criminal charges have been filed against the defendant." *Barker*, 149 F. Supp. 3d 521, 529 (M.D. Pa. 2016).

Chang argues that he "will suffer a tactical disadvantage if the stay is not granted," because Chang "will have to answer questions when deposed that could be used to establish crimes in South Korea," thus requiring that he exercise his Fifth Amendment rights. Dkt. No. 151-1 at 6; *see also* Dkt. No. 145 at 6. Chang also argues that Able would gain an unfair advantage if Chang were to assert his Fifth Amendment privilege because Able may "take advantage of adverse inferences." Dkt. No. 151-1 at 6. Able discounts these concerns, arguing that the questions Chang is seeking to avoid are already being posed to him in the related State Court Action, and that Chang's concerns are moot because he already sat for a voluntary interview with South Korean authorities and provided the information he avoids disclosing. *See* Dkt. No. 152 at 13.

At this point, Chang's concerns are not persuasive. He seems to claim that if a stay were denied, he could be forced to self-incriminate and give up his constitutional right under the Fifth Amendment, or conversely, invoke his Fifth Amendment right and face a potential adverse inference in this action. *See* Dkt. No.

11

145-1 at 6; Dkt. No. 151-1 at 6. There is just one glaring problem with that argument. The South Korean authorities—not the United States—are conducting the Criminal Investigation. Chang does not sufficiently establish that the South Korean criminal justice system maintains an equivalent right as the one guaranteed by the Fifth Amendment. And this Court will not conduct an independent analysis of foreign constitutional rights. *See United States v. Balsys*, 524 U.S. 666, 673–74 (1998) ("[W]e read the [Fifth Amendment] contextually as apparently providing a witness with the right against compelled self-incrimination when reasonably fearing prosecution by the government whose power the Clause limits, but not otherwise."); *In re Impounded*, 178 F.3d 150, 154 (3d Cir. 1999) (recognizing that the Court in *Balsys* held that the Fifth Amendment did not apply to foreign prosecutions).

Chang's criminal defense attorney, Mr. Jason Lee, in his certification in support of Chang's Motion, alludes to a South Korean right against self-incrimination and represents that "if [Chang] refuses to answer a question in the civil case, it can be used against him in South Korea, where exercising the right against self-incrimination is looked upon as being deceptive or hiding information and may be held against him." Lee Decl. ¶ 8, Dkt. No. 151-2. Mr. Jason Lee's statement, however, does not cite to any legal authority that sufficiently establishes that South Korea recognizes an equivalent to the Fifth Amendment protection against self-incrimination that can be invoked in this action.

Assuming, for the sake of thoroughness, that Chang could invoke the Fifth Amendment equivalent in South Korea, Chang has failed to provide convincing

12

arguments regarding the risk of self-incrimination and any unfair advantage Able may gain from an adverse inference. His concerns about self-incrimination are belied by the fact that he already answered questions at an interview with South Korean authorities. *See* Dkt. No. 152 at 13. The record in front of this Court is devoid of any evidence that he asserted a Fifth Amendment equivalent privilege. Therefore, the Court finds that Chang has not sufficiently established a risk of self-incrimination. This factor leans against a stay.

**(5)     The interests of the Court**

The fifth factor focuses on judicial efficiency in terms of managing the Court's caseload and particularly with resolving individual cases efficiently. *See Walsh*, 7 F. Supp. 2d at 528. A stay during the pendency of a criminal proceeding "promotes judicial economy because there is a reasonable expectation that the criminal investigation could clarify and define some issues in the civil matter." *Colombo*, 2011 WL 5416058, at *6 (citation modified). A stay would also conserve court resources that would otherwise be expended if the court were required to weigh in on "a constant stream of [Fifth Amendment] privilege issues." *Walsh*, 7 F. Supp. 2d at 528; *see also Colombo*, 2011 WL 5416058, at *6. However, the uncertainty that accompanies an indefinite stay weighs against granting the stay because "[i]t is unrealistic to postpone indefinitely the pending action until criminal charges are brought or the statute of limitations has run for all crimes conceivably committed . . . ." *Walsh.*, 7 F. Supp. 2d at 528 (quoting *Citibank, N.A. v. Hakim*, No. 92 CIV. 6233 (MBM), 1993 WL 481335, at *2 (S.D.N.Y. Nov. 18, 1993)); *see also Strategic Env't Partners*, 2011 WL 5416058, at *5 ("In this instance, there is no trial date in the

criminal matter so a stay of the civil matter would be indefinite. This weighs against granting the stay.").

Chang argues that, absent a stay, he will have to "refuse to answer questions during his deposition" to avoid self-incrimination, thus resulting in privilege challenges that would burden the Court. Dkt. No. 151-1 at 7. The parties have not sufficiently addressed whether Chang can assert the Fifth Amendment privilege here based on a foreign criminal investigation. Regardless, a stay here would be indefinite, with no certainty as to when the Criminal Investigation will end, or whether Chang will be prosecuted. As Able points out, "halting this matter to await the outcome of a foreign investigation with no definite timetable," Dkt. No. 152 at 15, does not promote judicial efficiency, especially given the substantial delays this case has already suffered. Therefore, this factor is, at best, neutral.

**(6)     The public interest**

"Generally, a grant of a stay of a civil case does not harm the public interest," *Frantatoro*, 2023 WL 5605669, at *4, and the public interest in resolution of criminal proceedings takes precedence. *See Walsh.*, 7 F. Supp. 2d at 529; *Colombo*, 2011 WL 5416058, at *6 ("The public interest is promoted by allowing a complete, unimpeded criminal investigation."). Here, this factor is neutral. While Chang notes that this case "is not the type of matter where there is a potential of any ongoing injury to the public," Dkt. No. 145-1 at 7, he does not present any compelling argument that staying this case pending a foreign criminal investigation is in the public interest. *See Rex*, 346 F. Supp. 3d at 413 ("Absent a more compelling showing that expeditious resolution of the civil claims against BComm will impede Israel's enforcement of its

criminal laws, BComm has failed to demonstrate that the public interest favors a stay.").

## IV. CONCLUSION

After balancing the *Walsh* factors, the Court finds that a stay of proceedings is not warranted. Therefore, Chang's Motion to stay these proceedings is **DENIED**. An appropriate order accompanies this Opinion.

_____
Hon. José R. Almonte
United States Magistrate Judge

Dated: December 17, 2025